763 A.2d 285 (2000)
335 N.J. Super. 544
STATE of New Jersey, Plaintiff-Appellant,
v.
Louis W. WILLIAMSON, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 24, 2000.
Decided December 6, 2000.
Robert D. Bernardi, Burlington County Prosecutor, for appellant (Mark B. Westfall, Assistant Prosecutor, of counsel and on the brief).
Ivelisse Torres, Public Defender, for respondent (Kevin Walker, Assistant Deputy Public Defender, of counsel and on the brief).
*286 John J. Farmer, Jr., Attorney General, amicus curiae (Paul H. Heinzel, Deputy Attorney General, of counsel and on the brief).
Before Judges STERN, A.A. RODRIGUEZ and FALL.
The opinion of the court was delivered by FALL, J.A.D.
In this appeal, we consider whether a defendant may raise a claim of selective enforcement based on racial profiling after his conviction and sentence, while his direct appeal is pending. We conclude that a defendant who has raised issues during a pretrial motion to suppress sufficient to establish a colorable basis for a claim of selective enforcement, when considered in the light of the April 1999 Interim Report of the State Police Review Team Regarding Racial Profiling Allegations (hereinafter "Interim Report"), and then been convicted and sentenced, may assert a claim of selective enforcement in violation of the Federal or State Constitutions while his direct appeal is pending.[1]See United States v. Armstrong, 517 U.S. 456, 465, 116 S.Ct. 1480, 1487, 134 L.Ed.2d 687, 699 (1996); State v. Moore, 164 N.J. 557, 753 A.2d 1151 (2000); State v. Ballard, 331 N.J.Super. 529, 539-43, 752 A.2d 735 (App.Div.2000); State v. Smith, 306 N.J.Super. 370, 376-78, 703 A.2d 954 (App.Div.1997); State v. Kennedy, 247 N.J.Super. 21, 25, 588 A.2d 834 (App.Div.1991). We also rule that since this case was still subject to direct appeal at the time defendant raised his claim of selective enforcement, the claimed infringements on his constitutional rights, if proven, were clearly capable of producing an unjust result and may be asserted as constituting the equivalent of "plain error." See R. 2:10-2.
Pursuant to leave granted, the State appeals from a discovery order entered in the Law Division on December 21, 1999 on the motion of defendant, Louis W. Williamson, for a new trial made while his direct appeal was still pending, based on a claim of newly-discovered evidence to support his claim of "racial profiling" or selective enforcement.[2]
Defendant was a passenger in an automobile stopped for speeding on the New Jersey Turnpike on March 28, 1996 by Troopers Layton and Caffrey. All three occupants of the vehicle were African-American. As requested by Trooper Layton, the driver produced his credentials, which were valid. Trooper Layton directed the driver to exit the vehicle and noticed that the driver appeared very fidgety and very nervous. When questioned, the driver advised Trooper Layton they were coming from New York where they were visiting friends. After questioning the driver, Trooper Layton proceeded to the passenger side of the vehicle, where the door was open and another passenger was outside the vehicle being questioned by Trooper Caffrey. Trooper Layton then looked inside the vehicle, where defendant was seated, and questioned defendant. Defendant advised Trooper Layton they were coming from either Delaware or Washington, D.C., visiting the other passenger's sick aunt and were heading back *287 to North Carolina, information that was inconsistent with that provided by the driver.
When questioning defendant, Trooper Layton noticed a very large bulge in the crotch area of defendant's pants. Defendant was removed from the vehicle and a pat-down search of defendant for weapons disclosed a substantial quantity of a controlled dangerous substance. Defendant was arrested, charged, and indicted.
Prior to trial, and after a suppression hearing on March 27, 1997 during which only Trooper Layton testified, defendant's motion to suppress was denied. Following a jury trial, defendant was convicted, on February 10, 1998, of first-degree possession of cocaine with intent to distribute, contrary to N.J.S.A. 2C:35-5b(1), and third-degree possession of cocaine, contrary to N.J.S.A. 2C:35-10a(1). On January 15, 1999, the State's motion for imposition of an extended term pursuant to N.J.S.A. 2C:43-6f was denied and defendant was sentenced to a fifteen-year term of imprisonment with a five-year period of parole ineligibility.
On January 29, 1999, the State filed a notice of appeal from denial of its motion for imposition of an extended term. On January 26, 2000, defendant's motion to file a notice of appeal nunc pro tunc was granted and defendant cross-appealed from his conviction and the sentence imposed.[3]
In April 1999, the Interim Report was released. On May 20, 1999, while the direct appeal was pending before us, defendant filed a pro se motion, pursuant to R. 3:20-1, seeking a new trial contending the Interim Report constituted new evidence of selective enforcement based on racial profiling. The Office of Public Defender was appointed to represent defendant. On August 31, 1999, defendant filed a motion in aid of litigant's rights seeking certain internal records of the state police to support his claim for a new trial based on his allegation of selective enforcement. On December 10, 1999, Judge Friedman heard defendant's motion and granted most of the discovery sought. An order memorializing the court's decision was entered on December 21, 1999.
On December 21, 1999, the State moved before the trial court for a stay pending determination of its motion for leave to appeal. On January 3, 2000, the State filed a motion before this court seeking leave to appeal from the December 21, 1999 discovery order. On January 21, 2000, the trial court denied the State's motion for a stay. The State then moved to amend its motion for leave to appeal to include an appeal from the trial court's order denying a stay. On February 3, 2000, we granted the State's motion to amend its motion for leave to appeal, and granted a stay pending disposition of the State's motion for leave to appeal, which we reserved pending disposition of the consolidated appeals in State v. Ballard, 331 N.J.Super. 529, 752 A.2d 735 (App.Div. 2000).
On June 6, 2000, we entered an order granting the State's motion for leave to appeal from entry of the December 21, 1999 discovery order to consider the State's argument that defendant waived his right to assert a claim of selective enforcement by his failure to properly and timely raise such a claim in his pre-trial motion to suppress.
At the pre-trial suppression hearing, Trooper Layton testified his actions were the result of a feeling that "something [was] just not ... right." When Trooper Layton was asked by defense counsel whether race played any role in his decision-making, *288 the following colloquy ensued:
Q. [Your suspicion that something was not right] [h]ad nothing to do with the fact that there were three African American individuals in a rental van; did it?
A. What? I don't understand the question.
Q. The fact that you were suspicious?
A. No, sir, not at all.
Q. Just the fact that they were nervousor excuse methe driver was nervous?
A. At that point, correct.
....
Q. Just so the record is clear, all three individuals in the van were African-Americans; weren't they?
A. Yes, sir, they were.
In summation, defendant's counsel argued, in pertinent part:
What we have here is three African-Americans late at night on the New Jersey Turnpike speeding. And without addressing whether they were really speeding or not, we have two troopers in a vehicle pacing them. The one trooper who testified here today testified that he couldn't see anybody but the driver. Pulled the driver over for speeding. Got the driver out of the vehicle for the purpose of producing credentials, and in the process of all this, the other trooper, who we haven't heard from, gets out and makes some inquiries.
The trooper who initially approached the driver notices a bulge in the pants of a passenger who's lying across the back seat of this minivan, and really, Judge, I don't see much more than that in terms of the totality of the circumstances, and it's really a question of whether that is enough to warrant herding the passengers out of the van and patting them down.
The trial court denied the motion to suppress, finding that Trooper Layton, having observed a large bulge in the crotch area of defendant's pants and fearing for his safety, was justified in conducting a pat-down search for weapons.
In granting the December 21, 1999 discovery order, Judge Friedman stated, in pertinent part:
Following the imposition of sentence, the State of New Jersey, the Attorney General's Office issued on April 20, 1999 what is referred to as the Interim Report about allegations of racial profiling on the turnpike. And ... admitted in that report that racial profiling does occur, although they say it is limited to a few renegade troopers, that it is not the policy of the State Police to have that.
With the admission by the Attorney General's Office that racial profiling is a fact, together with the decision of ... [State v. Soto, 324 N.J.Super. 66, 734 A.2d 350 (Law Div.1996)] ... [where] Judge Francis found that on the facts of his case ... there was colorable evidence of a de facto policy ..., not just a practice or procedure, of racial profiling; that is, of treating African Americans differently than other people, both in what they were stopped for, how they were stopped, how they were questioned, how they were searched, how they were requested for consent searches, how drug-sniffing dogs were brought to the scene.
Taking Judge Francis' findings in [State v. Soto ], together with the admissions of the Attorney General's Office that had studied the problem in its Interim Report of April 20, 1999, there is from that alone a colorable claim of selective enforcement and selective prosecution based, in part at least, on race which meets the criteria of [State v. Kennedy, 247 N.J.Super. 21, 588 A.2d 834 (App.Div.1991)], the landmark and seminal case on the subject, for the defendant to be entitled to discovery to find out exactly what the scope of this is.
....

*289 Mr. Williamson is in State Prison because of these matters which he questions into, and immediately upon the publication of the Interim Report and the distribution of it, within less than 30 days, he made this application attaching some information about the acknowledgment of racial profiling by the Attorney General's Office.
The State argues that when defendant failed to assert a claim of racial profiling or selective enforcement in a pre-trial motion, he waived any right to further argue its merits, pursuant to R. 3:10-2(c), which provides:
(c) Defenses and Objections Which Must be Raised Before Trial. The defense of double jeopardy and all other defenses and objections based on defects in the institution of the prosecution or in the indictment or accusation, except as otherwise provided by R. 3:10-2(d) (defenses which may be raised only before or after trial) and R. 3:10-2(e) (lack of jurisdiction), must be raised by motion before trial. Failure to so present any such defense constitutes a waiver thereof, but the court for good cause shown may grant relief from the waiver.
We view the defense-preclusion rule outlined in R. 3:10-2(c) as being applicable to "defenses and objections based on defects in the institution of the prosecution or in the indictment or accusation," namely, to "selective prosecution" claims. The claim asserted by defendant is grounded in "selective enforcement," not "selective prosecution." Moreover, even if R. 3:10-2(c) was applicable to defendant's claim, the possible violation, by police officers, of constitutional rights encompassed in the Fourteenth Amendment of the federal constitution and in the New Jersey Constitution, N.J. Const. Art. I § 7, would certainly constitute "good cause ... [to] grant relief from the waiver[,]" R. 3:10-2(c), and would be considered "one `of sufficient public concern.'" Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 230, 708 A.2d 401 (1998) (citations omitted).
We conclude defendant did not waive his right to assert a claim of selective enforcement while his direct appeal was still pending even though such a claim was not explicitly asserted in a pre-trial motion. While we are satisfied there were sufficient inferences of selective enforcement raised at the suppression hearing, when considered in the light of the Interim Report, to permit defendant to raise the selective enforcement issue, in the form of a motion for a new trial, while his direct appeal was pending, there is yet another basis to permit defendant to assert this claim. Because the case was still subject to direct appeal, we conclude defendant was permitted to assert a claim of selective enforcement founded on racial profiling on the basis of "plain error," since infringement of constitutional rights, if established, was clearly capable of producing an unjust result. See R. 2:10-2.
We are in substantial agreement with the reason articulated by Judge Friedman for entry of a discovery order in his oral opinion delivered on December 10, 1999. However, on January 21, 2000, the Supreme Court issued an Administrative Order that provides, in pertinent part, that "Judge Walter R. Barisonek of Union County, Law Division, is hereby designated as the sole judge to whom all motions for discovery raised in racial profiling by the New Jersey State Police shall be directed;..." Accordingly, we affirm the conclusion of Judge Friedman that discovery is warranted and, in accordance with the Administrative Order, remand the order of discovery to Judge Barisonek to reconsider the scope of discovery, in advance of consideration of defendant's motion. Upon completion of discovery, the Law Division, Burlington County, shall decide the merits of defendant's motion.
Affirmed and remanded. We do not retain jurisdiction.
NOTES
[1] In State v. Ross, 335 N.J.Super. 536, 763 A.2d 281 (App.Div.2000), decided today, we ruled that a racial profiling or selective enforcement challenge to a warrantless search of a motor vehicle is preserved for direct appeal when racial profiling was not directly urged as a ground for suppression at the trial level. In State v. Velez, 335 N.J.Super. 552, 763 A.2d 290 (App.Div.2000), also decided today, we ruled that a defendant can raise a claim of racial profiling or selective enforcement for the first time on direct appeal after entry of a guilty plea after denial of his motion to suppress at least when, as there, the Interim Report was published after the judgment of conviction. We also concluded that entry of a guilty plea does not constitute a waiver of a profiling or selective enforcement claim if such claims were raised or are related to a claim asserted at the motion to suppress.
[2] The terms "racial profiling" and "selective enforcement," in the context of this case, are synonymous and used interchangeably.
[3] In a separate opinion, also filed today, State v. Williamson, A-2964-99T4, we affirmed defendant's conviction, reversed the denial of the State's motion for imposition of an extended term, and remanded for a determination of whether defendant's prior North Carolina conviction is "substantially equivalent" to any of the offenses enumerated in N.J.S.A. 2C:43-6f and, if so, for the re-sentencing of defendant to an extended term.