763 A.2d 290 (2000)
335 N.J. Super. 552
STATE of New Jersey, Plaintiff-Respondent,
v.
Ruben VELEZ, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Alexander B. Chapman, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 2000.
Decided December 6, 2000.
Susan Brody, Assistant Deputy Public Defender, argued the cause for appellant Ruben Velez (Ivelisse Torres, Public Defender, attorney; Ms. Brody, on the brief).
Carl H. Hadigian, Designated Counsel, Newark, argued the cause for appellant Alexander B. Chapman.
Daniel I. Bornstein, Deputy Attorney General, argued the cause for respondent (John J. Farmer, Jr., Attorney General, attorney; Mr. Bornstein, of counsel and on the brief).
Before Judges STERN, A.A. RODRIacute;GUEZ and FALL.
*291 The opinion of the court was delivered by STERN, P.J.A.D.
Following denial of their motions to suppress, defendants entered negotiated pleas of guilty to possession of more than five pounds of marijuana with intent to distribute in violation of N.J.S.A. 2C:35-5a(1) and 2C:35-5b(1), a second degree crime, in exchange for a recommendation that they be sentenced as third degree offenders to a three year custodial sentence. On June 25, 1998, prior to publication of the Interim Report of the State Police Review Team Regarding Allegations of Racial Profiling, they were sentenced in accordance with the recommendation.
While their direct appeals were pending, defendant Chapman, subsequently joined by defendant Velez, moved to remand the case for further proceedings based on "newly discovered evidence of racial profiling." We denied the motion pending determination of the direct appeal. In the opinion on the direct appeal, we found no Fourth Amendment violation and that the CDS was found as a result of a valid consent to search. However, we permitted defendants to address the "profiling" issue to this panel. State v. Chapman, 332 N.J.Super. 452, 457 n. 2, 471 n. 5, 753 A.2d 1179. Defendants now claim entitlement to pursue the issue and to discovery on the subject.[1]
The critical issue before us is whether defendants can raise the profiling issue on direct appeal after the denial of their motion to suppress and a subsequent guilty plea. The State contends that they may not because defendants' guilty pleas constituted a waiver of the issue. The State further contends that, because R. 3:5-7 concerns motions to suppress based on violations of the Fourth Amendment, a "profiling" claim raised therein would not be subject to preservation for appeal under R. 3:5-7(d) as claims of "profiling" or "selective enforcement" arise under the due process and equal protection clauses of the Fourteenth Amendment. See State v. Ballard, 331 N.J.Super. 529, 540-41, 752 A.2d 735 (App.Div.2000).
While we agree with the State that R. 3:5-7 was adopted to address motions to suppress physical evidence obtained in violation of the Fourth Amendment, see State v. Robinson, 224 N.J.Super. 495, 498-504, 540 A.2d 1313 (App.Div.1988), "profiling" claims also challenge stops, searches and seizures on constitutional grounds and have been raised incident to motions to suppress evidence obtained in violation of an allegedly unconstitutional stop, search or seizure. Thus, even though "profiling" issues have their "roots in the equal protection and due process clauses [and] the claim of selective prosecution is somewhat foreign to Fourth Amendment interests and analysis," State v. Kennedy, 247 N.J.Super. 21, 29-30, 588 A.2d 834 (App. Div.1991), they have also been developed in New Jersey incident to motions to suppress under R. 3:5-7. Indeed, in State v. Smith, 306 N.J.Super. 370, 703 A.2d 954 (App.Div.1997), this court considered both the denial of a request for discovery in support of a selective enforcement claim and the denial of a motion to suppress in an appeal following the entry of guilty pleas, and there was no suggestion advanced that defendants' guilty pleas constituted a waiver of the "profiling" claim.
R. 3:5-7 is also the vehicle for moving to suppress evidence unconstitutionally obtained in violation of the New Jersey Constitution, N.J. Const. art. I, ¶ 7,[2] and even if no Fourth Amendment issue is technically involved, a "profiling" issue involves a claim of an unlawful *292 search and seizure in violation of the State Constitution cognizable under R. 3:5-7. See State v. Carty, 332 N.J.Super. 200, 206-07, 753 A.2d 149 (App.Div.), certif. granted, 165 N.J. 605, 762 A.2d 219 (2000), holding that "articulable suspicion is a necessary prerequisite under the New Jersey Constitution to requesting a consent to search after a routine stop for a traffic violation," and relying, in part, on the Interim Report in terms of the need and justification for the requirement. Thus, at least where the "profiling" claim is asserted as part of the motion to suppress, it is preserved for consideration on appeal by virtue of R. 3:5-7(d). We conclude that the "profiling" issue is sufficiently raised in this case and that a remand is therefore in order for the Designated Judge hearing "racial profiling" claims to set the parameters of discovery. See State v. Ballard, supra.
Generally, when a defendant voluntarily admits his or her guilt and acknowledges he or she has committed the crime, the plea constitutes a "waiver" of all issues not preserved for appeal. See, e.g., State v. Vasquez, 129 N.J. 189, 194, 609 A.2d 29 (1992); State v. Szemple 332 N.J.Super. 322, 328-29, 753 A.2d 732 (App.Div.2000); State v. Robinson, supra, 224 N.J.Super. at 498, 540 A.2d 1313. However, certain rules permit defendants to preserve an issue for appeal without requiring him or her, or the State, to spend time and resources trying the case in order to preserve the issue for appeal. Hence, shortly after the United States Supreme Court decided Lefkowitz v. Newsome, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), our Supreme Court adopted R. 3:5-7(d) which preserves for appeal issues rejected during a motion to suppress. See State v. Robinson, supra, 224 N.J.Super. at 499-501, 540 A.2d 1313.
The facts developed on the motion to suppress in this case were detailed in our prior opinion, 332 N.J.Super. at 456-60, 753 A.2d 1179. Here, the factual assertions raised at the motion to suppress include claims that the request for a consent search was discriminately based on the trooper's discovery that the Velez brothers, passengers in the vehicle being driven by Chapman, were Colombians.
The following was developed at the motion to suppress on the cross-examination of Trooper Ocentik by co-defendant Curran's attorney, after establishing that the Velez brothers were from Colombia and that the trooper "had read a few books related to the Colombian drug cartels and had arrested Colombians for transportation or trafficking of narcotics about twenty times":
Q. When you turned to Trooper Hanley and said "Two Colombians," were you thinking at this point about the books you had read?
A. Yep, they quite possibly were in the back of my mind, yes.
Q. And were you thinking as well about the Colombians you had previously arrested in connection with narcotics trafficking?
A. Yeah. My past experiences are flashing by.
Q. Okay. So would it be fair to say then, Trooper, that at this point in time, at the point in time at which you observe and say to Trooper Hanley, "Two Colombians," drawing on your professional experience and your experience in reading these books about the Colombian drug cartels, your suspicions have become less general and more specific and you are now aiming more towards a narcotics investigation; is that fair to say?
A. Yeah, after I see Ruben sweating and he tells me he's from Colombia, yeah, that's fair to say.
And in his summation, counsel for defendant Chapman argued:
He's read books about Colombians, not about the wonderful culture of Colombia and its people, not about the music, not about the arts, not about *293 their religion; about the drug cartel. One group of people within the race, and he admitted, Judge, on the stand under oath that it is possible that he does not doubt that when he learned that both Ruben and Roberto Velez were Colombians, that in his mind that book and the drug cartel came in mind. He thought about that, and that may have had an influence on his suspicions being further arisen or increased.
He acted on the basis that there were two whites, two Hispanics who happened to be from Colombia in New Jersey in a vehicle bearing California tags. Clearly, I submit to the Court, irrespective of his testimony, a profile consideration.
....
I submit to the Court it was based on the race of the two occupants in the back, and conduct by the government in that fashion, I submit to the Court, is a violation of their civil rights. And that was the motivating factor in all this inquiry that they now say resulted in the suspicion.
Hence, the "profiling" issue, albeit technically constituting a claim of selective enforcement or selective prosecution, was sufficiently raised at the R. 3:5-7 hearing and preserved under R. 3:5-7(d), even though the proper vehicle for asserting a "selective enforcement" or "selective prosecution" claim may generally be under R. 3:10-2(c).[3]
Recently our Supreme Court "summarily remand[ed]" a matter for "reconsideration [of] the motions to suppress in connection with which the [Law Division was directed to] consider the `Interim Report of the State Police Review Team Regarding Allegations of Racial Profiling' published by the office of the Attorney General on April 20, 1999." State v. Moore, 164 N.J. 557, 753 A.2d 1151 (2000). We cannot tell from the Supreme Court's summary order itself if the case involved a claim of "profiling" asserted for the first time on direct appeal. However, it is a published order of the Supreme Court, and we therefore obtained a copy of the petitions for certification filed by Moore and co-defendant Dickey.[4]See R. 1:36-3. See also State v. Cruz Construction Co., 279 N.J.Super. 241, 250, 652 A.2d 741 (App.Div.1995).
The State contends that Moore must be limited to reconsideration of defendant's Fourth Amendment claim and, at the most, to a re-evaluation of the trooper's testimony as it relates to that subject. The Supreme Court's remand in Moore for "reconsideration [of] the motion to suppress" must have at least meant that the profiling material was relevant to the testing of defendants' Fourth Amendment claim. Here, the defendants assert that the evidence about profiling would be relevant to their Fourth Amendment claim. A remand for discovery is warranted on that basis alone. However, Moore cannot be read so narrowly.
Moore and Dickey had both challenged on their direct appeals the denial of their motions to suppress. Dickey argued that "the police's stop of defendant's vehicle was without objectively reasonable suspicion and violated defendant's rights under the Fourth Amendment and the New Jersey Constitution." He also argued that "the police lacked valid consent to search the vehicle." Moore argued that "the trial court erred in denying defendant's motion to suppress." In our November 22, 1999 unpublished opinion, we summarily rejected all contentions, stating that
in the absence on the scene of an objection from defendants or the other occupant of the vehicle to the search of the *294 jacket found in the car, it was objectively reasonable for the officer to conclude that the driver, Moore, had the apparent authority to consent to the search of the vehicle and its contents including the jacket.
We also noted that Dickey "requested a remand for reconsideration of the suppression issue and to expand the record based on State v. Soto, (Law Div.1996 [published in 1999 at 324 N.J.Super. 66, 734 A.2d 350])" and a remand "so that he may exercise discovery and seek to present and examine witnesses in an effort to establish a claim of selective enforcement of the traffic laws by the New Jersey State Police." However, "we [saw] nothing in Soto, supra, that would justify a remand."
In his petition for certification, Moore argued, among other things, that "the trial court erred in denying defendant's motion to suppress." Dickey argued the following:
POINT I THE STATE FAILED TO PRESENT CREDIBLE EVIDENCE TO SUPPORT THE STOP OF THE DEFENDANTS' AUTO. IN LIGHT OF THE ATTORNEY GENERAL'S FINDINGS CONCERNING RACIAL PROFILING IT IS MORE LIKELY THAT DEFENDANTS WERE SINGLED OUT FOR A STOP AND CONSENT SEARCH BECAUSE THEY ARE AFRICAN-AMERICANS. THE ACTIONS OF THE POLICE VIOLATED DEFENDANT'S STATE AND FEDERAL RIGHTS AGAINST UNREASONABLE SEARCHES AND SEIZURES, DUE PROCESS, AND EQUAL PROTECTION OF THE LAW. (U.S. CONST., AMENDS. IV AND XIV; N.J. CONST. (1947), ART. I, PARAS. 1, 7.)
A) Judge [M's] Credibility Finding Was Wrong And Should Not Be Permitted To Stand
B) Judge [M's] Finding As To the Validity Of The Consent To [S]earch Was Also Wrong
C) Petitioner's Rights To Due Process And Equal Protection Were Infringed
POINT II THE POLICE LACKED VALID CONSENT TO SEARCH THE VEHICLE
There can be no doubt, in light of State v. Moore, supra, that the Supreme Court did not limit the remand to consideration of Fourth Amendment issues. Hence, a defendant can raise a "profiling" issue for the first time on direct appeal at least when, as here, the Interim Report was published after judgment was entered; and while Moore did not involve a guilty plea, a guilty plea does not constitute a waiver of a "profiling" claim if it was raised or is related to a claim asserted at the motion to suppress.
Accordingly, the matter is remanded to the Designated Judge for consideration of the scope of discovery, and, thereafter, for further proceedings in Bergen County where the judgment of conviction was entered.
NOTES
[1] Defendant Chapman did not file a supplementary brief on the profiling issue but without objection from the State participated at argument.
[2] In State v. Johnson, 68 N.J. 349, 353 n. 2, 346 A.2d 66 (1975), the Supreme Court stated that "R. 3:5-7, which establishes a procedure for the suppression of illegally seized evidence, applies to any search and seizure found to be unlawful, whether under federal or state law." See also, e.g., State v. Alston, 88 N.J. 211, 218-20, 440 A.2d 1311 (1981).
[3] In the course of denying the motion to suppress, the judge asked "was this a profile," and rejected the notion by concluding "from the totality of the circumstances" that there was "a valid stop" and a "valid consent to search."
[4] Dickey had moved before us for a remand in light of the Interim Report, published while his direct appeal was pending. We denied the motion.