775 A.2d 79 (2001)
STATE of New Jersey, Plaintiff-Respondent,
v.
Glenford FRANCIS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 20, 2001.
Decided May 22, 2001.
*80 Peter A. Garcia, Acting Public Defender, attorney for appellant (Michael L. Kuhns, Designated Counsel, on the brief).
William H. Schmidt, Bergen County Prosecutor, attorney for respondent (Annmarie Cozzi, Assistant Prosecutor, of counsel).
Appellant filed a pro se supplemental brief.
Before Judges STERN, COLLESTER and FALL.
The opinion of the court was delivered by STERN, P.J.A.D.
Tried to a jury, defendant was convicted of possession of one-half ounce or more of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1) and -5b(2) (count one); possession of cocaine, N.J.S.A. 2C:35-10a(1) (count two); hindering prosecution, N.J.S.A. 2C:29-3 (count three); and resisting arrest, N.J.S.A. 2C:29-2 (count four). At sentencing, the trial judge merged count two into count one and sentenced defendant on the second degree possession with intent conviction to an extended term of fifteen years with a mandatory minimum period of five years before parole eligibility. However, the judgment contains no reference to any period of parole ineligibility. Nor does it impose the sentence on a count by count basis or merge count two into count one. It merely states "defendant found guilty on [counts] 1-4 jury trial. 15 years N.J.S.P. (all counts concurrent)." Further, as the State candidly points out, penalties and assessments should not have been imposed on the merged count. It requests a remand "to the trial court for entry of an amended judgment of conviction."
In imposing sentence, the trial judge indicated that he was imposing the presumptive extended term and a mandatory minimum term in connection therewith. See N.J.S.A. 2C:43-6f. The mandatory minimum, as the judge noted, had to be between one-third and one-half of the specific term sentence. Defendant does not contest that his appeal may provide the basis for correction of the judgment and inclusion of a mandatory minimum parole ineligibility term on a judgment that otherwise did not provide it. In any event, the oral decision controls, see State v. Womack, 206 N.J.Super. 564, 503 A.2d 352 (App.Div.1985), certif. denied, 103 N.J. 482, 511 A.2d 658 (1986), and in this case, a mandatory minimum was imposed on the record. In these circumstances, we remand for entry of a corrected judgment of conviction.
Before us defendant argues:
POINT I VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE AND DEFENDANT'S CONVICTION SHOULD BE REVERSED AND THE MATTER REMANDED FOR A NEW TRIAL.
POINT II FIFTEEN YEAR SENTENCE IMPOSED ON THE DEFENDANT IS MANIFESTLY AND UNDULY PUNITIVE.
POINT III PROSECUTOR'S SUMMATION IMPROPERLY CREATED INFERENCE FOR THE JURY AS TO THE DEFENDANT'S FAILURE TO TESTIFY AND THEREBY WARRANTS REVERSAL OF THE CONVICTION AND A NEW TRIAL.
*81 POINT IV DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE [OF] COUNSEL DUE TO COUNSEL'S FAILURE TO RAISE THE ISSUE OF SELECTIVE ENFORCEMENTRACIAL PROFILING.
In his supplementary pro se brief, defendant further contends:
POINT I THE INDICTMENT IN THIS CASE WAS BASED IN PART, ON PERJURED TESTIMONY AND AS SUCH, DEFENDANT WAS DENIED DUE PROCESS OF LAW IN VIOLATION OF HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND THE CONSTITUTION OF NEW JERSEY
POINT II TRIAL COUNSEL WAS IN[ ]EFFECTIVE THROUGHOUT THE PROCEEDINGS, VIOLATING DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL PURSUANT TO THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
POINT III THE TRAFFIC STOP MADE BY TROOPER JEFFREY FITZHENRY CLAIMING A TRAFFIC VIOLATION WAS A PRETEXT STOP DONE IN ORDER TO COVER SELECTIVE ENFORCEMENT IN VIOLATION OF DEFENDANT'S FOUR-TEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1 PARAGRAPH 1 AND 5 OF THE NEW JERSEY CONSTITUTION
POINT IV THE EXPERT WITNESS TESTIMONY OF SENIOR INVESTIGATOR SHARON MALONE CONCERNING THE DISTRIBUTION CHARGE AGAINST DEFENDANT VIOLATED THE RIGHT TO [D]UE PROCESS OF LAW AS ENUNCIATED IN THE FIFTH AND SIX AMENDMENT[S] TO THE UNITED STATES CONSTITUTION
POINT V THE VERDICT IN THIS CASE WAS AGAINST THE WEIGHT OF THE EVIDENCE, VIOLATING DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS ENUNCIATED IN THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENT[S] TO THE UNITED STATES CONSTITUTION
POINT VI THE TAKING OF URINE SAMPLES FROM DEFENDANT BY TROOPER FITZHENRY VIOLATED THE FOURTH AND FIFTH AMENDMENT RIGHTS TO THE UNITED STATES CONSTITUTION
Our careful review of the record convinces us that the contentions regarding the trial are clearly without merit and warrant only the following discussion in a written opinion. See R. 2:11-3(e)(2).
The record before us includes no motion to suppress filed on behalf of defendant.[1] Only two witnesses testified at trial, State Trooper Jeffrey Fitzhenry and Bergen County Senior Investigator Sharon Malone. The trooper testified regarding events on July 31, 1997, and Investigator Malone testified as an expert with respect to defendant's intent.
According to Trooper Fitzhenry, at about 7:39 p.m. on July 31, 1997, he observed *82 a red Ford with Pennsylvania license plates on the New Jersey Turnpike in Ridgefield Park. The vehicle was "travelling southbound at around mile marker 119" "coming from [Interstate] 95 towards the inner roadway southbound towards the New Jersey Turnpike." The vehicle was "directly in front of" the trooper and "travelled over the line onto the left and then swerved over to the right line of the demarcation... to the lane next to it and went back and forth a few different times." Fitzhenry continued to follow the vehicle which "changed lanes without using its signal." Fitzhenry then "activated [his] overhead emergency lights and stopped the vehicle ... at mile marker 117.8 on the inner roadway[ ] of the New Jersey Turnpike."
According to Fitzhenry, "the driver exited from the vehicle, ran towards the front of his car around to the right, back around his car" and when ordered to stop, "retrieve[d] a package from the right front portion of his pants and threw it across the highway." "It was a package ... roughly the size of a softball or so, wrapped in silver duct tape." The object "landed on the right shoulder of the outer roadway." The driver, identified as defendant, "continued to run past [the trooper's] vehicle," and though directed to stop, he continued to push the trooper before being finally "subdued" by the officer after he did not "voluntarily stop."
In the interim, the other occupant of the vehicle "fled the scene" before Fitzhenry was able to place defendant in the rear of the "trooper car." Thereafter, backup arrived and Fitzhenry "retrieved the package [defendant had thrown] from the right shoulder" of the Turnpike. "It was a softball sized hard chunky substance wrapped in silver duct tape." The contents were tested and found to contain 89.38 grams or 3.15 ounces of crack cocaine. The State also established that defendant lived in Philadelphia.
Senior Investigator Malone testified that in her opinion, defendant possessed the cocaine "for intent to distribute." Her opinion was based on "the amount alone... because it is not consistent with a personal use amount for crack cocaine" together with the fact that "there was no paraphernalia for ingestion of the substance" and that "the individual ... tested negative ... for a substance." She also testified that in Philadelphia, "the street level value of that amount [involved] would be approximately $8,800."
The evidence was more than sufficient to sustain the verdict.
Defendant contends that the prosecutor's summation "improperly put in the mind of the jury, a burden on the Defendant to testify or present evidence." He challenges the following portion of the summation:
Ladies and gentlemen, the only evidence you heard in this case was the version by Trooper Fitzhenry. There was no evidence to directly contradict his version of events. And I would submit to you that his version[ ] of events is entirely credible.
There was no objection to the summation at the time of the statement, but after the summation was over defense counsel stated:
I didn't want to object during [the prosecutor's] closing, but I feel compelled to bring something to the Court's attention. During her closing argument she stated no contrary version to the events that took place. It think that that is a violation of Griffin versus California, [380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed2d 106 (1965),] because in effect it creates an inference to the defendant's failure to testify. That's improper.
*83 Defense counsel moved for a mistrial, and the prosecutor indicated that she did not think the remark was "improper in the context of this case where the allegations were that the trooper fabricated the story." The trial judge denied the mistrial. He stated:
I don't feel it creates such an inference. I feel that the Prosecutor clearly stated that the defendant has no obligation to come forward; that she was making reference to the one witness that the State had that was uncontroverted by any other witnesses, be it State's witnesses or defense witnesses other than the defendant.
It is true that the defense summation was based on Trooper Fitzhenry's lack of credibility. In any event, during colloquy with counsel the trial judge indicated that he would instruct that defendant had "no responsibility" to testify, and did instruct the jury as follows:
The defendant in this case chose not to be a witness. It is the constitutional right of a defendant to remain silent. That should not in any way be held against him. I charge you that you are not to consider for any purpose or any manner in arriving at your verdict the fact that the defendant did not testify, nor should that fact enter into your deliberations or discussions in any manner or at any time. The defendant is entitled to have the jury to consider all of the evidence, and he is entitled to the presumption of innocence even if he does not testify as a witness.
We find no basis for reversal as a result of the single comment of the prosecutor in summation. See, e.g., State v. Scherzer, 301 N.J.Super. 363, 439-42, 694 A.2d 196 (App.Div.), certif. denied, 151 N.J. 466, 700 A.2d 878 (1997).
Finally, defendant contends that he was denied the effective assistance of counsel. He asserts that the issue of selective enforcement or "racial profiling" should have been raised by counsel. According to defendant (in his counselled brief):
In this case the issue was never brought up by his counsel. The first opportunity would have been a pre-trial motion to suppress the evidence.... Another opportunity would have been [at] oral argument at the time of trial. And lastly, the questioning of the appropriate witnesses on this matter. This issue was not raised at any point in the process.
In fact, from our review of the record, the only time the issue of race arose was when Officer Fitzhenry testified on direct examination that when stopping the vehicle, he "noticed that there were two black males inside the vehicle." In his pro se supplementary brief, defendant asserts this is a "racial profiling" case.
Through counsel, defendant asks us to remand the matter to the trial court "to explore this issue [of selective enforcement (racial profiling)] and allow for discovery on the matter." He asserts that this is appropriate because of "the similarity of facts" in State v. Soto, 324 N.J.Super. 66, 734 A.2d 350 (Law Div.1996). However, unlike Soto, this case involves no record in support of a claim of racial profiling or selective enforcement, and no such issue was raised in the trial court.[2]
In State v. Ross, 335 N.J.Super. 536, 763 A.2d 281 (App.Div.2000), we permitted defendant to raise an issue of "racial profiling" on direct appeal because the issue "was raised" at trial, "although defendant failed to present any evidence of selective enforcement." Id. at 541, 763 A.2d 281. *84 Defendant had argued at the motion to suppress that counsel "believed" that racial profiling existed and was involved in the case. Ibid.
In State v. Williamson, 335 N.J.Super. 544, 763 A.2d 285 (App.Div.2000), we permitted a defendant to raise an issue of racial profiling by motion for new trial "while his direct appeal was pending," where defendant had raised issues "during a pretrial motion to suppress sufficient to establish a colorable basis for a claim of selective enforcement." Id. at 545, 763 A.2d 285. We ruled that "since this case was still subject to direct appeal at the time defendant raised his claim of selective enforcement, the claimed infringements on his constitutional rights, if proven, were clearly capable of producing an unjust result and may be asserted as constituting the equivalent of `plain error.'" Id. at 546, 763 A.2d 285.
Similarly, in State v. Velez, 335 N.J.Super. 552, 763 A.2d 290 (App.Div.2000), we concluded that defendant's guilty plea following the denial of his motion to suppress did not constitute a waiver of a claim of "selective enforcement" or "racial profiling" raised for the first time on appeal, when defendant sufficiently raised the issue or what could be perceived as a claim of "racial profiling" in advancing the motion to suppress, the denial of which was preserved for appeal under the plea-preservation rule, R. 3:5-7(d). Id. at 557-58, 763 A.2d 290.
In Ross, Williamson and Velez, we remanded to the judge designated by the Supreme Court to consider issues regarding discovery in cases involving claims of "racial profiling" by the State Police. After proceedings before him, the motions to suppress are to be reconsidered by the motion judge, together with claims specifically directed to the issues of "selective enforcement" or "racial profiling." See State v. Velez, supra, 335 N.J.Super. at 558-60, 763 A.2d 290. See also State v. Williamson, supra, 335 N.J.Super. at 551, 763 A.2d 285; State v. Ross, supra, 335 N.J.Super. at 541, 543, 763 A.2d 281. Unlike those cases, however, here there was no motion to suppress to be reconsidered on the basis of the discovery being sought. We nevertheless remand for further proceedings before the designated judge.
In State v. Ballard, 331 N.J.Super. 529, 752 A.2d 735 (App.Div.2000), we examined a claim relating to a request for discovery in a Bergen County case based on the April 1999 Interim Report of the State Police Review Team Regarding Racial Profiling Allegations (hereinafter "the Interim Report"). The State argued that the trial judge employed the wrong standard for finding that the threshold for discovery had been satisfied and that, in any event, "the lower court erred in concluding that the Interim Report established a colorable basis for granting discovery of the patrol records and radio logs pertaining to individual troopers in the absence of any proffer whatsoever that their behavior was racially motivated." Ballard, supra, 331 N.J.Super. at 536, 752 A.2d 735. The State also contended "that the defendants in Bergen ... [C]ount[y] have not satisfied a `threshold' requirement entitling them to discovery in support of their selective enforcement claims." Id. at 539, 752 A.2d 735. In remanding for consideration of the scope of discovery by the designated judge, we held that the Bergen defendants, as well as the others before us:
have satisfied the "threshold" necessary for purposes of obtaining discovery in these cases.... The decision of the Law Division in [State v. Soto, 324 N.J.Super. 66, 734 A.2d 350 (Law Div.1996) ], the Interim Report, and the lack of any presentation of facts that indicated a change in the policy or practice of the State Police between the Soto decision of March 1996 and the Interim Report of *85 April 1999, leads us to conclude that the threshold has been satisfied.

[Id. at 542-43, 752 A.2d 735.]
Despite the lack of motion to suppress and any argument in the record to support suppression on "profiling" grounds, we cannot reconcile the lack of remand in this case with our disposition in Ballard, even though that decision involved claims of "racial profiling" raised pretrial. Stated differently, if the Soto opinion and Interim Report were sufficient to permit the remand in Ballard, we cannot conclude that the opinion and report would not require the same in this case. As in Ballard, this State Police stop in Bergen County occurred in 1997, between the time of the Soto decision and the filing of the Interim Report, id. at 548, 752 A.2d 735, and as in Ballard, "[t]he decision of the Law Division in Soto, supra, the Interim Report, and the lack of any presentation of facts that indicated a change in the policy or practice of the State Police between the Soto decision of March 1996 and the Interim Report of April 1999, [must] lead[ ] us to conclude that the threshold has been satisfied." Id. at 542-43, 752 A.2d 735.
To hold that defendant is entitled only to a hearing on a petition for post-conviction relief based on a claim of ineffective assistance of counsel would traditionally require this defendant who now asserts he is the victim of racial profiling to prove the two prongs of the Strickland test, see Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also State v. Preciose, 129 N.J. 451, 609 A.2d 1280 (1992); State v. Fritz, 105 N.J. 42, 519 A.2d 336 (1987), even though he asserts on a timely direct appeal a contention we have permitted to be raised as "plain error" on direct appeal. As a claim of selective enforcement should properly be raised on a motion to dismiss pursuant to R. 3:10-2(c), see Velez, supra, 335 N.J.Super. at 557-58, 763 A.2d 290, and while the failure to make such a motion generally "constitutes a waiver thereof," "the court for good cause shown may grant relief from the waiver." R. 3:10-2(c). See also R. 1:1-2 (relaxation of rules). We hold that this case, involving a direct appeal from a judgment entered following a trial, before the Interim Report was published, warrants a remand to the designated judge and subsequent proceedings on defendant's application to the trial judge for further relief if the discovery warrants such application. See Velez, supra, 335 N.J.Super. at 560, 763 A.2d 290; Williamson, supra, 335 N.J.Super. at 551, 763 A.2d 285; Ross, supra, 335 N.J.Super. at 543, 763 A.2d 281.
Accordingly, we affirm defendant's conviction and the presumptive sentence and minimum parole ineligibility term imposed thereon and remand for further proceedings before the designated judge and for an amended judgment of conviction by the trial court.
NOTES
[1] In its supplementary responding brief, the State says a motion was made and later withdrawn.
[2] In defendant's pro se supplementary brief, defendant argues "this case should be remanded for a new trial or the indictment dismissed."