**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4643-17T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ISAAC P. ROSS,

      Defendant-Appellant.

_____

Submitted January 14, 2020 – Decided February 28, 2020

Before Judges Gilson and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 16-10-2020.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel Vincent Gautieri, Assistant Deputy Public Defender, of counsel and on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Chief Appellate Attorney, of counsel; Dina Rochelle Khajezadeh, Assistant Prosecutor, on the brief).

PER CURIAM

Following a bifurcated trial before a single jury, defendant Isaac P. Ross appeals his convictions for aggravated assault and related weapons offenses, and certain persons not to have weapons. Prior to trial, the motion judge conducted a hearing and determined defendant was competent to stand trial. During the trial – when defendant insisted upon wearing jail-issued garb – the trial judge questioned defendant and concluded he was still competent to continue with the trial. After appropriate mergers, defendant was sentenced to an aggregate twelve-year prison term, with six years of parole ineligibility.

On appeal, defendant raises the following points for our consideration:

POINT I

THE MATTER SHOULD BE REMANDED FOR A NEW COMPETENCY HEARING BECAUSE THE COURT FAILED TO: (1) ADEQUATELY PROBE [DEFENDANT]'S UNDERSTANDING OF THE N.J.S.A. 2C:4-4 FACTORS AND FAILED TO ENSURE THAT HE WOULD COOPERATE WITH COUNSEL; AND (2) REASSESS [DEFENDANT]'S COMPETENCY AFTER HE CHOSE TO APPEAR AT TRIAL IN JAIL GARB AND WHEN HE TESTIFIED, CONFESSING HIS GUILT TO THE MOST SERIOUS CHARGES IN THE INDICTMENT.

A. The Judge's Questioning of [Defendant] at the Competency Hearing Was Inadequate, as He: Provided [Defendant] with Answers to the Questions and Allowed [Defendant] to Parrot Back his Responses; Failed to Ask Necessary Follow-up Questions When [Defendant] Revealed a Lack of Understanding; and

2

Failed to Probe [Defendant]'s Ability to Work with Counsel After the Psychologist's Report Revealed that [Defendant] Had a Long History of Refusing to Discuss Sensitive Topics.
[(Not Raised Below)]

B.    The Court Failed to Take Necessary Steps to Reassess [Defendant]'s Competency When, During the Trial, [Defendant] Took Irrational Actions, such as Attending Trial in Jail Garb and Confessing his Guilt to the Most Serious Charges During his Trial Testimony.
(Not Raised Below)

POINT II

THE [TWELVE]-YEAR EXTENDED TERM SENTENCE ON THE CERTAIN-PERSONS COUNT IS EXCESSIVE AND THE MATTER MUST BE REMANDED FOR RESENTENCING FOR REASONS INCLUDING THE COURT'S FAILURE TO CONSIDER DEFENDANT'S MENTAL-HEALTH ISSUES IN MITIGATION.

POINT III

THE COURT ERRED IN IMPOSING FINANCIAL PENALTIES ON A MERGED COUNT.
(Not Raised Below)

We are unpersuaded by the arguments raised in points I and II; the State concedes defendant's contentions asserted in point III. We therefore affirm defendant's convictions and sentence, but remand to correct the imposition of fines in the judgment of conviction.

## I.

### A. <u>Defendant's pretrial competency hearing</u>

#### 1.

We commence our review with a brief discussion of the relevant legal principles to lend context to the motion judge's determination that defendant was competent to stand trial.

Pursuant to N.J.S.A. 2C:4-4(a):  "No person who lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as such incapacity endures."  The proofs must establish "the defendant has the mental capacity to appreciate his presence in relation to time, place and things[,]" N.J.S.A. 2C:4-4(b)(1); and he understands:  his presence in a courtroom facing criminal charges; the role of the judge, prosecutor and defense attorney; the consequences should he elect to testify or waive that right; a jury may decide his charges or he may plead guilty but he relinquishes certain rights by doing so; and his ability to participate in his own defense, N.J.S.A. 2C:4-4(b)(2).

Our case law plainly establishes that trial judges, and not experts, must make the final competency determination under N.J.S.A. 2C:4-4. <u>State v. Moya</u>, 329 N.J. Super. 499, 506 (App. Div. 2000).  Nonetheless, the trial court

generally should rely upon evaluations by one or more mental health professionals, who have opined upon the defendant's condition and ability to "understand and participate in the legal process." State v. Gorthy, 226 N.J. 516, 530-31 (2016).

Where, as here, the trial court conducts a competency hearing, the State has the burden to prove by a preponderance of evidence that the defendant's mental condition "does not render him or her incompetent to stand trial." Id. at 530. The State need not prove the defendant "is capable of formulating legal strategy" or is able to "communicate with his counsel using complex language." Id. at 531. The focus instead turns on the extent the defendant's mental condition "precludes meaningful interaction with his or her attorney." Id. at 532.

2.

The facts underpinning defendant's convictions are straightforward. A.A. (Alan)[1] was employed as the front desk assistant manager at a hotel in Seaside Heights. In the early morning hours on August 6, 2016, Alan had been sleeping on the floor of his hotel room, but awoke to find defendant standing over him, holding a gun. As Alan stood up, defendant pointed the gun in his direction,

---

[1] We use initials to protect the victim's privacy and a pseudonym for ease of reference.

A-4643-17T4

stating, "don't you." Alan was terrified but he made his way into the bathroom and called the police. Defendant's presence in the lobby was captured on video.

Within minutes, two local officers responded and confronted defendant in the hotel's parking lot. One of the officers "immediately" noticed "the grip of a firearm sticking out of [defendant]'s right pocket." Defendant did not comply with the officers' commands to drop the handgun, but the officers disarmed defendant when he turned away from them. Defendant initially refused to be handcuffed. During the booking process at headquarters, defendant was "extremely uncooperative," refusing to be fingerprinted, photographed or answer questions about his pedigree. Although he was placed on suicide watch upon his admission at the Ocean County Jail (OC Jail), defendant neither was prescribed psychotropic medication nor received mental health services while incarcerated.

Two months later, defendant was charged in a five-count Ocean County indictment with third-degree unlawful possession of a compressed-air handgun, second-degree possession of the handgun for an unlawful purpose, fourth-degree aggravated assault for pointing the handgun at Alan, third-degree resisting arrest, and second-degree certain persons not to have weapons. Defendant was assigned counsel, but he refused to communicate with three successive attorneys

A-4643-17T4

about his charges and "any potential mental health [issues] that seem[ed] to be apparent through his paranoia." Without objection from the State, the motion judge granted defense counsel's application for a competency evaluation pursuant to N.J.S.A. 2C:4-5.

3.

In December 2016, Michael A. Siglag, Ph.D., a licensed psychologist on staff with Ann Klein Forensic Center, interviewed defendant at the OC Jail for seventy-five minutes. As part of his evaluation, Dr. Siglag reviewed defendant's criminal records and spoke with his attorney. The following month, Dr. Siglag issued a report, recommending inpatient psychiatric hospitalization "for treatment and evaluation, to determine if [defendant's] competency c[ould] be established and/or restored."

In formulating his opinion, Dr. Siglag considered defendant's initial hesitancy to participate in the interview and "guarded" responses to the doctor's questions. Defendant was unwilling to answer "questions intended to evaluate concentration, attention, abstract thinking, and problem solving." Defendant was otherwise "alert and attentive . . . respond[ing] with brief but logical and plausible answers to questions about his background, education, and employment history." Defendant denied mental health issues, medical

7

problems, and substance abuse. He refused to discuss his criminal charges, expressing distrust for his attorney and the criminal justice system.

Pursuant to Dr. Siglag's recommendation, defendant was hospitalized at Ann Klein and evaluated by Heidi Camerlengo, Ed.D., during hour-long sessions on two consecutive days in April 2017. In addition to reviewing defendant's criminal records and his medical records from the OC Jail and Ann Klein, Dr. Camerlengo consulted with defendant's cousin, brother, attorney, and the hospital's treatment team. Defendant was cooperative with his treating doctor, who did not prescribe any psychotropic medications. Defendant was residing on "a higher functioning unit" of the hospital at the time of his evaluation. His hospitalization at Ann Klein marked his first admission to a psychiatric hospital.

Defendant told Dr. Camerlengo he had been referred to grief counseling after his mother died when he was twelve years old, but he refused to participate in any services. He disclosed he was once referred for a behavioral health evaluation by the probation department, but he "denied going to treatment or being prescribed any medication thereafter." Defendant "eventually" told Dr. Camerlengo he had heard God speak to him "'strongly' on one occasion but

declined to elaborate." Defendant denied he had threatened to harm himself or others upon his admission to the OC Jail.

On the subject of his pending criminal case, defendant told Dr. Camerlengo he understood the charges were serious, acknowledging he "would go to prison for a while" if he were found guilty. As detailed in Dr. Camerlengo's April 10, 2017 report, she determined defendant was "properly oriented to time, place, and things"; understood the roles of the judge, jury, prosecutor, and defense counsel; correctly stated the names of the prosecutor and his attorney; and understood his right to testify, the consequences of lying, and the plea-bargain process. The doctor also opined that defendant was able "to participate in an adequate presentation of his defense."

Dr. Camerlengo concluded, within a reasonable degree of psychological certainty, defendant was competent to stand trial. The doctor explained:

> [D]efendant's answers to competency[-]related questions demonstrated that he was in adequate possession of the required factual information relevant to the criminal justice system. He also demonstrated the ability to apply a rational analysis to his case. He demonstrated an ability to work with his attorney in order to achieve the most favorable outcome.

Four months later, another judge commenced a competency hearing pursuant to N.J.S.A. 2C:4-4, but adjourned the proceedings when defendant

refused to answer several of the judge's questions.[2]  The hearing was continued two weeks later.  During his exchange with the motion judge, defendant provided coherent responses that reflected a cogent understanding of the legal process.  Among other things, defendant confirmed his awareness of the roles of the judge, jury, prosecutor and defense counsel.  Neither defense counsel nor the State argued defendant was not competent to stand trial, "submit[ting] to the discretion of the court."  Based upon his colloquy with defendant and the findings and conclusions set forth in Dr. Camerlengo's uncontroverted report, the judge concluded defendant was competent to stand trial.

4.

For the first time on appeal, defendant claims the motion judge's colloquy with him was inadequate primarily for failing to probe defendant's ability to assist with his defense in view of Dr. Camerlengo's report that defendant refused to discuss sensitive topics.  We have considered defendant's arguments pursuant to our "highly deferential" standard of review, Moya, 329 N.J. Super. at 506, and conclude the judge's determination was supported by sufficient evidence in the record, State v. Purnell, 394 N.J. Super. 28, 50 (App. Div. 2007), without

---

[2]  At this hearing and all subsequent proceedings, defendant was represented by his fourth deputy public defender.

the need for discussion in our written opinion, <u>R.</u> 2:11-3(e)(2), beyond the following brief comments.

Although there were questions concerning defendant's competency at the initial hearing, the motion judge astutely adjourned the hearing and thoroughly questioned defendant at the second hearing. Neither defense counsel nor the State contested the findings of Dr. Camerlengo's report. Importantly, at the conclusion of the motion judge's inquiry with defendant, defense counsel did not argue defendant was not competent to stand trial, leaving the determination to the court's discretion. Because the record is devoid of any evidence that defendant's mental condition "preclude[d] meaningful interaction with his . . . attorney," we discern no basis to disturb the motion judge's decision. <u>Gorthy</u>, 226 N.J. at 532.

### B. <u>Defendant's mid-trial competency inquiry</u>

#### 1.

We turn to defendant's newly-minted argument that the trial judge failed to reassess defendant's competency after he appeared in jail-issued garb and confessed to the assault charges. Defendant's contentions are unavailing.

Trial was held before another judge within five months of the motion judge's decision. On the third trial day, defendant appeared in court dressed in

"a green jumpsuit with big white letters [stating] OC Jail on his right pant leg."

He refused to change into khaki pants and a shirt provided by the public

defender's office. With counsel's permission, the judge engaged in the following

colloquy with defendant:

> THE COURT: Okay. Mr. Ross, . . . it's clear to you that the two attorneys and the court think that you wearing the present clothing that you're wearing is a profoundly bad idea. Do you understand that?
>
> []DEFENDANT: Yes.
>
>     . . . .
>
> THE COURT: And you understand our concern, don't you, that we are concerned that jurors will see you in the prison garb and draw a negative inference. Do you understand that?
>
> []DEFENDANT: Yes.
>
> THE COURT: Okay. And you understand we don't want to create that situation of allowing them to draw a negative inference by virtue of a choice you made voluntarily to wear prison garb. You understand my thinking, right?
>
> []DEFENDANT: Yes.
>
> THE COURT: Can you explain to us why you've chosen to wear that particular prison garb now after you've spent two days wearing the clothing that have been provided by [your attorney] to you, the civilian clothing that you wore the past two days?

[]DEFENDANT: I just don't feel like wearing the clothes that were given to me because I don't feel good. I just don't feel good about the situation.

THE COURT: Well, what is it about the clothing that doesn't make you feel good?

[]DEFENDANT: It's just my – I just – this is just what I want to wear.

THE COURT: Okay. Let me ask the question this way. Why is it you want to wear that particular clothing after you've worn the other clothing for two days?

[]DEFENDANT: This is just what I want to wear, Judge. Forgive me for not having a reason but this is just what I want to wear.

THE COURT: Okay. . . . The fact that you've chosen to dress in this fashion is not going to delay the process. You understand that?

[]DEFENDANT: Yes.

THE COURT: And you understand that none of us believe[s] that this is a good idea and that's been impressed upon you forcefully by [your attorney], correct?

[]DEFENDANT: Yes. Forgive me, Judge.

Before proceeding with testimony, the judge voir dired the jurors individually to ensure they could "render a fair and impartial verdict

notwithstanding [defendant's] attire." Each juror told the judge defendant's appearance would not impact his or her verdict.[3]

At the conclusion of the State's case that day, the judge questioned defendant regarding his right to testify or remain silent. Defendant's affirmative answers to the judge's inquiry indicated he understood his rights. Defense counsel stated he was satisfied with the sufficiency of the judge's inquiry. Defendant elected to testify.

Defendant acknowledged he had entered Alan's locked hotel room using a card key, without Alan's permission. Defendant told the jury he did not remain in the room "long because [he] was debating . . . about whether [he] wanted to fight the guy or not." Defendant also acknowledged he pointed the handgun at Alan, stating "if you ever" as "a warning," but not to scare him. Defendant identified the handgun admitted in evidence and admitted he did not have a permit to own, carry, or purchase the weapon. Defendant did not dispute his prior convictions for second, third, and fourth degree offenses. He denied he resisted arrest. The jury acquitted defendant of that charge, but found him guilty of all other charges.

---

[3] The judge's final jury instructions included the conformed model charge. See Model Jury Charges (Criminal), "Defendant – Testifying in Jail Garb or Prison Garb" (approved May 12, 2014).

A-4643-17T4

2.

Defendant contends his behavior during trial should have signaled to the judge that he was no longer competent.  Although we appreciate an individual's competency can be a dynamic and complicated subject, we are unpersuaded that the trial judge – based on defendant's answer to his mid-trial inquiries and the steps the motion judge previously had taken to assure defendant's competency – had any mandatory obligation to undertake any additional measures. Defendant's decision to wear jail garb and to testify, by all outward manifestations, had been repeatedly discussed with his counsel and the court. Defendant nonetheless exercised his right to wear clothing that indicated he was in custody at trial and present his account to the jury.  See Gorthy, 226 N.J. at 536 (recognizing the importance of providing a defendant with mental health issues with the autonomy to make the choice to testify).  Further, defense counsel endeavored to use defendant's seemingly inculpatory narrative to his advantage, arguing during summation that the officers "grabbed [defendant], pushed him down to the ground, [and] he never had the opportunity to . . . physically resist arrest . . . ."  The jury agreed.

Based upon our review of the record, we conclude the trial judge adequately addressed defendant's decisions to wear jail garb and testify at trial.

15

Accordingly, we reject defendant's belated argument that the trial judge was required to reexamine defendant's competency at trial.

## II.

Defendant separately argues his sentence was excessive, claiming: (1) the trial judge failed to find mitigating factor four (the existence of "substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense"), N.J.S.A. 2C:44-1(b)(4); and (2) the extended-term sentence imposed under N.J.S.A. 2C: 44-3(a) was excessive in view of his minor prior record. We disagree.

Our well-established review of sentencing determinations is limited. State v. Roth, 95 N.J. 334, 364-65 (1984). We are "bound to affirm a sentence, even if [we] would have arrived at a different result, as long as the trial court properly identifie[d] and balance[d] aggravating and mitigating factors that [were] supported by competent credible evidence in the record." State v. Natale, 184 N.J. 458, 489 (2005). Ordinarily, we will leave undisturbed a sentence imposed that is not manifestly excessive or unduly punitive, does not constitute an abuse of discretion, and does not shock the judicial conscience. State v. Lawless, 214 N.J. 594, 606 (2013); see also Roth, 95 N.J. at 364-65.

The trial judge carefully considered, but ultimately rejected, defense counsel's argument that mitigating factor four applied to explain defendant's behavior "as opposed to a justification or defense." The judge "struggle[d]" with mitigating factor four's "substantial grounds" requirement, explaining: "Believe me, I looked long and hard through the mitigating [factors] in this case, and I just . . . couldn't get there." Although Dr. Camerlengo diagnosed defendant with "Other Specified Trauma and Stressor-Related Disorder (Bereavement)" under the DSM 5,[4] neither she nor any other mental health professional opined that defendant's mental illness provided "substantial grounds" to excuse his conduct. Cf. State v. Hess, 207 N.J. 123, 148-49 (2011) (recognizing mitigating factor four applied where PCR counsel provided an expert report that the defendant suffered from battered wife's syndrome). We find no basis to disturb the judge's decision not to apply mitigating factor four.

B.

N.J.S.A. 2C:44-3(a) permits the court, upon the State's application, to sentence a defendant convicted of a second-degree crime to an extended term if

---

[4] American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013).

the defendant was twenty-one years of age or older when he committed the offense for which he is being sentenced, and the defendant was "previously convicted on at least two separate occasions of two crimes." The prior crimes must have been committed at different times, when the defendant was at least eighteen years old, "if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within [ten] years of the date of the crime for which the defendant is being sentenced." Ibid.

Once a defendant qualifies for a discretionary extended term, the range of the sentences the court may impose "starts at the minimum of the ordinary-term range and ends at the maximum of the extended-term range." State v. Pierce, 188 N.J. 155, 169 (2006). Accordingly, the trial court could have sentenced defendant – who was convicted of a second-degree crime – to anywhere from five years (the minimum for second-degree crimes) to twenty years (the maximum extended term). See N.J.S.A. 2C:43-7(a)(3). The choice rests within the sentencing court's "sound judgment" after weighing aggravating factors (N.J.S.A. 2C:44-1(a)) against the mitigating factors (N.J.S.A. 2C:44-1(b)). See Pierce, 188 N.J. at 168-69 ("[W]hether the court chooses to use the full range of sentences opened up to [it] is a function of the court's assessment of the aggravating and mitigating factors, including the consideration of the deterrent

need to protect the public.").  The choice, however, is "subject to reasonableness and the existence of credible evidence in the record to support the court's finding[s] . . . ." Id. at 169.

In the present matter, the trial judge granted the State's motion for an extended term on the second-degree certain persons not to have weapons conviction, and sentenced defendant in the middle of the range to twelve years, with six years of parole ineligibility.[5]  In doing so, the judge found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that the defendant will commit another offense"); six, N.J.S.A. 2C:44-1(a)(6) ("[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted"); and nine, N.J.S.A. 2C:44-1(a)(9) (specific and general deterrence) applied.  The judge attributed "substantial weight" to aggravating factors three and nine and "considerable weight" to aggravating factor six.  Noting "defendant's prior criminal record involves two prior weapon offenses within just a few years" and the use of a weapon in this offense, the judge emphasized "the need to protect the public."  The judge found no mitigating factors.

---

[5] Defendant does not otherwise challenge the court's sentence, which imposed concurrent terms of imprisonment on all convictions.

A-4643-17T4

Based upon our review of the record, we conclude the trial judge applied correct legal principles and his findings regarding aggravating and mitigating factors are supported by the record. See State v. Megargel, 143 N.J. 484, 493 (1996). We find no clear error of judgment in the judge's application of the facts to the law that would shock our conscience. See ibid. Accordingly, we find no abuse of discretion in the imposition of an extended term or the particular sentence imposed here. See Pierce, 188 N.J. at 166 n.4; see also State v. Hudson, 209 N.J. 513, 526 (2012).

III.

Finally, although the trial judge properly merged defendant's conviction for aggravated assault with his conviction for possession of a weapon for an unlawful purpose, the judge incorrectly imposed fines on the aggravated assault conviction. See State v. Francis, 341 N.J. Super. 67, 69 (App. Div. 2001) (recognizing a court may not impose penalties and assessments on a merged conviction). Accordingly, we vacate the fine on the aggravated assault conviction and remand for the purpose of correcting the judgment of conviction.

Affirmed in part, vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20