247 N.J. Super. 21 (1991)
588 A.2d 834
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CURTIS KENNEDY, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT UNDERWOOD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 1991.
Decided March 25, 1991.
Submitted February 26, 1991.
*23 Before Judges PRESSLER, DEIGHAN and BAIME.
A-1444-88T4
Sheri Woliver, Deputy Public Defender, argued the cause for appellant Kennedy (Wilfredo Caraballo, Public Defender, Sheri Woliver on the brief and reply letter-brief).
*24 Frank J. Bucsi, Senior Warren County Assistant Prosecutor, argued the cause for respondent (Richard C. Hare, Warren County Prosecutor, attorney; Frank J. Bucsi on the brief).
Jane Grall, Deputy Attorney General, submitted a brief and argued the cause on behalf of amicus curiae State of New Jersey (Robert J. Del Tufo, Attorney General, attorney; Jane Grall on the letter-brief).
Deborah A. Ellis submitted a letter-brief on behalf of amicus curiae American Civil Liberties Union.
A-1471-88T4
Wilfredo Caraballo, Public Defender, attorney for appellant Underwood (Theodore E. Kyles, Jr., designated counsel, on the letter-brief; Ruthann Russo, designated counsel, on the supplemental brief).
Richard C. Hare, Warren County Prosecutor, attorney for respondent (Frank J. Busci, Senior Assistant Prosecutor, on the brief).
A-1444-88T4 Argued February 26, 1991.
A-1471-88T4 Submitted February 26, 1991.
The opinion of the court was delivered by BAIME, J.A.D.
Defendants' automobile was stopped for speeding on Interstate Route 80. The resulting search of the vehicle disclosed a substantial quantity of controlled dangerous substances. Following a jury trial, defendants were convicted of first degree possession of cocaine with intent to distribute (N.J.S.A. 2C:35-5b(1)) and possession of marijuana (N.J.S.A. 2C:35-10a(4)).
Although additional arguments are advanced, defendants' principal contention on appeal is that the Law Division erred by denying their pretrial motion to obtain internal State Police records allegedly supportive of their claim of discriminatory enforcement of New Jersey's traffic laws. They assert that while the stop of their vehicle for a traffic violation was objectively reasonable, it was actually prompted by an officially sanctioned or de facto State Police policy of targeting members *25 of minority groups. Defendants argue that the information they seek is relevant to their claim of invidious, institutional racism.
We hold that a defendant must establish a colorable basis for a claim of selective enforcement in order to obtain pretrial discovery of relevant items in the exclusive control of a government agency. We also conclude that the statistical survey submitted by defendants, although deficient in many particulars, was sufficient to establish their entitlement to the materials requested, and that the Law Division mistakenly exercised its discretion in denying defendants' motion.

I.
We briefly summarize the facts pertinent to defendants' claim of selective enforcement.[1] On October 14, 1987, State Troopers Darrell Albonico and Raymond Lasso were conducting stationary radar monitoring on the westbound lanes of Interstate Route 80 in Knowlton Township, Warren County. At approximately 3:00 p.m., the officers observed a black, late model Lincoln with Ohio license plates travelling at a high rate of speed. It is undisputed, and in fact conceded by defendants' attorneys, that the automobile was clocked at 69 m.p.h., well in excess of the applicable speed limit.
Trooper Albonico approached the Lincoln from the driver's side. Initially, the officer observed only the driver, defendant Underwood. At some point, however, Albonico noticed defendant Kennedy seated on the passenger side, leaning toward the floor area. Underwood was asked for his driver's credentials, but was unable to produce a license. According to Trooper Albonico, he then peered through the window and observed a *26 clear plastic bag on the floorboard, containing brown vegetation, a suspected marijuana "roach" and a packet of "E-Z Wider rolling paper." The officer ordered both defendants to exit from the vehicle and, after retrieving the bag, placed them under arrest.
Trooper Albonico asked defendants if they would consent to a search of the automobile. According to Albonico, he told them that they had the right not to consent. Both defendants verbally agreed to permit the search, noting that the automobile did not belong to them. Using his keys, defendant Underwood opened the trunk of the automobile. Trooper Lasso noticed the corner of a plastic bag protruding from the area near the spare tire. The bag contained a "white, powdery substance." After defendants were handcuffed and placed in the patrol car, Trooper Lasso conducted a more thorough search of the Lincoln. The search disclosed a cellular telephone belonging to defendant Kennedy. The registration, which was found in the glove compartment, listed Ford Motor Credit Co. as the owner of the automobile and T.O.A. Investments, as the lessee.
Following the return of the indictment, defendants, along with four other individuals whose criminal charges stemmed from arrests for traffic violations on Route 80, filed a consolidated motion, seeking (1) State Police logs, radio reports and tapes of all stops during the weeks of their respective arrests, (2) materials containing State Police training procedures, including videotaped sessions and manuals, (3) all training materials in the Elite Drug Interdiction Unit, and (4) the names of all instructors of the New Jersey State Troopers "who have been employed as such within the last five years." Defendants, who are non-caucasians, claimed that their arrests, even if objectively reasonable, were tainted by a long-standing, systematic practice of invidious discrimination against minorities reflected in the selective enforcement of New Jersey's traffic laws. They asserted that the materials requested would support their claim.
*27 Accompanying defendants' motion was a study prepared by the Warren County Public Defender's Office which disclosed that in 43 of its cases involving motor vehicle stops on Route 80 in a three year period, 70% related to African-American occupants, 7% Hispanics and 23% caucasians. It was said that these figures were disproportionate to the Warren County Public Defender's caseload within the last eight months which was comprised of 76% caucasians and 17% African-Americans. In addition, an affidavit filed by a staff member of the American Civil Liberties Union (ACLU), alleged that she had received "numerous complaints" from minority citizens claiming that they had been stopped for "minor traffic violations" and subjected to intrusive searches.
The Law Division denied defendants' motion, finding that the Public Defender's statistical study fell short of establishing a colorable claim of selective enforcement. The court stressed that defendants had failed to present evidence tending to show the existence of the essential elements of the defense and that the materials in the State's possession would be probative of a claim of discriminatory enforcement. Defendants were found guilty of the charges following a lengthy trial and were later sentenced to substantial prison terms.
Defendants filed separate appeals. We thereafter granted the motions of the Attorney General and the ACLU to appear amicus curiae. We now consolidate defendants' appeals and remand for further proceedings.

II.
We begin with the well-recognized principle that generally the proper inquiry for determining the constitutionality of a search and seizure is whether the conduct of the law enforcement officer who undertook the search was objectively reasonable, without regard to his or her underlying motives or intent. See, e.g., United States v. Sokolow, 490 U.S. 1, 10, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1, 12 (1989); Maryland v. Macon, *28 472 U.S. 463, 470-471, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370, 378 (1985); Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168, 178 (1978); United States v. Hawkins, 811 F.2d 210, 214 (3rd Cir.1987), cert. den. 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987); United States v. Smith, 799 F.2d 704, 708-709 (11th Cir.1986); State v. Bruzzese, 94 N.J. 210, 219-221, 463 A.2d 320 (1983) cert. den. 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). The fact that the officer does not have the state of mind hypothesized by the reasons which provide the legal justification for the search and seizure does not invalidate the action taken, so long as the circumstances, viewed objectively, support the police conduct. State v. Bruzzese, 94 N.J. at 220, 463 A.2d 320.
Were we to adopt a subjective rule, practically every search and seizure case would require the court to engage in a costly and time consuming expedition into the state of mind of the searching officer. Id. at 221, 463 A.2d 320. Since motives are seldom apparent or vocalized, there is little reliable evidence of them. Ibid. Even where motives are evident, human behavior is generally the product of a complex of reasons and emotions, and "[a] judge cannot and should not be required to weigh [these factors] to determine which one guided the officer's [conduct]." Ibid. Delving into the ulterior motives of police officers penalizes those who outwardly behave in a constitutionally appropriate manner. Id. at 222, 463 A.2d 320. Moreover, a defendant subjected to an objectively reasonable search might receive a windfall because the officer harbored evil thoughts. For these reasons, the United States Supreme Court and our highest court have held that the application of the objective standard best protects the privacy of citizens. Id. at 225, 463 A.2d 320.
This principle has been applied in a variety of contexts germane to the issue presented. In a series of federal decisions, it has been said that the courts will not inquire into the motivation of a police officer whose stop of an automobile is based upon a traffic violation committed in his presence. See *29 United States v. Smith, 799 F.2d at 708-709; United States v. Hollman, 541 F.2d 196, 198 (8th Cir.1976); cf. United States v. Villamonte-Marquez, 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983). The fact that the justification for the stop was pretextual was found to be irrelevant. In a similar vein, the United States Supreme Court recently held that a law enforcement officer's reliance on a "drug courier profile[]" was not material where the arrest of the suspect was otherwise reasonable and supported by probable cause. United States v. Sokolow, 490 U.S. at 10, 109 S.Ct. at 1587, 104 L.Ed.2d at 12. The Court said that a judge "sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion, but the fact that those factors may be set forth in a `profile' does not somehow detract from their evidentiary significance...." Ibid.
Citing these principles, the State contends that the courts are foreclosed from considering defendants' claim of selective enforcement. The State asserts that because defendants' arrests were objectively reasonable, there is no justification for judicial inquiry into the motivation of the State Troopers.
We agree that ordinarily application of an objective standard of reasonableness is sufficiently protective of the constitutional right of privacy. The requirement of reasonableness "is not one without teeth." State v. Bruzzese, 94 N.J. at 226, 463 A.2d 320. Further, having its roots in the equal protection and due process clauses, the claim of selective prosecution is somewhat foreign to Fourth Amendment interests and analysis. We thus recognize that the "Fourth Amendment proscribes unreasonable actions, not improper thoughts," and that the subjective motives of the arresting or searching police officer are generally beyond the appropriate bounds of judicial inquiry. State v. Bruzzese, 94 N.J. at 219, 463 A.2d 320.
However, different considerations are applicable where, as here, the claim is made that a police agency has embarked upon an officially sanctioned or de facto policy of targeting *30 minorities for investigation and arrest. Defendants do not seek information concerning the hidden thoughts or motivations of individual police officers. Instead, the inquiry they request focuses upon the existence or non-existence of a course of conduct, one that presumably can be proven or disproven by objective evidence.
Recognition of discriminatory enforcement as a basis for exclusion of evidence is consistent with our case law. An essential objective of the exclusionary rule is to deter unlawful police conduct. See Delguidice v. New Jersey Racing Comm'n, 100 N.J. 79, 494 A.2d 1007 (1985). The central purpose of the judge-made remedy is to deter future insolence in office by those charged with enforcement of the law. State v. Bisaccia, 58 N.J. 586, 591, 279 A.2d 675 (1971). The objective is to compel respect for the constitutional guaranty in the most effective way  by removing the incentive to disregard it. Id. at 591-592, 279 A.2d 675. The rule also implicates concerns of judicial integrity. The judiciary should not lend its aid to brazen lawlessness by passively accepting the fruits of police misconduct. It is morally incongruous for the State to flout constitutional protections and at the same time demand that its citizens obey the law.
These policies are well-served by exclusion of evidence obtained through selective enforcement of the laws based on racial criteria. We live with the legacy of a racist past. It is sad but true that long after the close of the Civil War racial discrimination remains a fact of life. "Perhaps today that discrimination takes a form more subtle than before[,] [b]ut it is not less real or pernicious." Rose v. Mitchell, 443 U.S. 545, 559, 99 S.Ct. 2993, 3001, 61 L.Ed.2d 739, 751 (1979). The ongoing influence of our unfortunate shared experience is acknowledged by our "`unceasing efforts' to eradicate racial prejudice from our criminal justice system." McCleskey v. Kemp, 481 U.S. 279, 309, 107 S.Ct. 1756, 1775, 95 L.Ed.2d 262, 289 (1987). These efforts have taken various forms. See, e.g., Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 *31 (1986); Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); State v. Gilmore, 103 N.J. 508, 511 A.2d 1150 (1986); State v. Rochester, 54 N.J. 85, 253 A.2d 474 (1969). The point to be stressed here is that by discarding the general use of a subjective analysis for Fourth Amendment purposes, "we afford no legal protection to police officers who invade the privacy of citizens as a means of racist or political harassment." State v. Bruzzese, 94 N.J. at 226, 463 A.2d 320.

III.
Although our courts have dealt with a myriad of issues respecting the defense of selective enforcement, see State v. Sutton, 80 N.J. 110, 402 A.2d 230 (1979); State v. Savoie, 128 N.J. Super. 329, 320 A.2d 164 (App.Div. 1974), rev'd on other grounds 67 N.J. 439, 341 A.2d 598 (1975); State v. Jennings, 126 N.J. Super. 70, 79, 312 A.2d 864 (App.Div. 1972), certif. den. 60 N.J. 512, 291 A.2d 374 (1972); State v. Forbes, 153 N.J. Super. 336, 379 A.2d 529 (Law Div. 1977), our research discloses no reported New Jersey opinion defining the proper scope of pretrial discovery. However, federal decisions provide some guidance.
The federal courts have adopted a standard under which a defendant establishes his right to discovery if he can show that he has a "colorable basis" for a selective prosecution claim. See Wayte v. United States, 470 U.S. 598, 623-624, 105 S.Ct. 1524, 1539, 84 L.Ed.2d 547, 566 (1985) (Marshall, J., dissenting); Government of Virgin Islands v. Harrigan, 791 F.2d 34, 36 (3rd Cir.1986); United States v. Mitchell, 778 F.2d 1271, 1277 (7th Cir.1985); Attorney General of U.S. v. Irish People, Inc., 684 F.2d 928, 932 (D.C. Cir.1982), cert. den. 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983); United States v. Diggs, 613 F.2d 988, 1003-1004 (D.C. Cir.1979), cert. den. 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 838 (1980); United States v. Murdock, 548 F.2d 599, 600 (5th Cir.1977); United States v. Oaks, 508 F.2d 1403, 1409 (9th Cir.1974), aff'd following remand 527 F.2d *32 937 (9th Cir.1975), cert. den. 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976); United States v. Berrios, 501 F.2d 1207, 1211 (2nd Cir.1974); United States v. Berrigan, 482 F.2d 171, 181 (3rd Cir.1973). Under these decisions, a defendant must present "some evidence tending to show the existence of the essential elements of the defense and that the documents in the government's possession would indeed be probative of these elements." United States v. Berrios, 501 F.2d at 1211-1212. Cf. Griffin v. Municipal Court, 20 Cal.3d 300, 142 Cal. Rptr. 286, 571 P.2d 997 (1977); Murguia v. Municipal Court for Bakersfield, 15 Cal.3d 286, 124 Cal. Rptr. 204, 540 P.2d 44 (1975) (en banc); People v. Superior Court of Los Angeles Cty., 111 Cal. App.3d 948, 168 Cal. Rptr. 915 (1981); Perakis v. Superior Court, 99 Cal. App.3d 730, 160 Cal. Rptr. 445 (1979).
This is a sound rule. The threshold test we adopt here constitutes a reasonable accommodation of competing values. A more lenient standard would encourage the assertion of spurious claims of selective enforcement as a means of burdening criminal trials with massive discovery of material completely irrelevant to the defendant's case. United States v. Murdock, 548 F.2d at 600; see also United States v. Hazel, 696 F.2d 473 (6th Cir.1983); United States v. Erne, 576 F.2d 212 (9th Cir.1978). The "colorable basis" standard is nonetheless consistent with our Supreme Court's repeated exhortations that liberal pretrial discovery practice "promotes the quest for truth." State in Interest of W.C., 85 N.J. 218, 221, 426 A.2d 50 (1981); State v. Montague, 55 N.J. 387, 401, 262 A.2d 398 (1970); State v. Cook, 43 N.J. 560, 566, 206 A.2d 359 (1965); see also State v. CPS Chemical Co., Inc., 198 N.J. Super. 236, 242, 486 A.2d 944 (App.Div. 1985), app. den. 105 N.J. 502, 523 A.2d 151 (1985); State v. Polito, 146 N.J. Super. 552, 556, 370 A.2d 478 (App.Div. 1977); State v. Braeunig, 122 N.J. Super. 319, 330-331, 300 A.2d 346 (App.Div. 1973); State v. Satkin, 127 N.J. Super. 306, 310, 317 A.2d 379 (App.Div. 1974).

*33 IV.
Applying these principles, we find that the Public Defender's statistical survey was marginally sufficient to raise a colorable claim of selective enforcement. At the very least, the data contained in the study took "the question past the frivolous state and raise[d] a reasonable doubt" as to whether the State Police are enforcing the traffic laws in an evenhanded fashion without regard to non-germane racial criteria. United States v. Hazel, 696 F.2d at 475.
We recognize many deficiencies in the Public Defender's survey. When statistics are used to establish a pattern of discrimination, their validity depends upon an accurate identification of the group or population from which the selection was made. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). In that context, the Public Defender's survey should have contained information on the racial composition of the group of persons who violate the traffic laws on roadways patrolled by the State Police. This is the pool of persons from which State Troopers must select violators. This information was readily available to the Public Defender. Indeed, the ACLU has submitted to us a study disclosing the racial composition of those exceeding the speed limit on another roadway and has described in some detail the techniques utilized in obtaining this information. Because the statistical study presented by the ACLU pertains to a distant highway, not Route 80, and in any event was not submitted to the Law Division, we do not consider its contents in deciding this appeal. We stress, however, that it would have been a relatively easy task for the Public Defender to have obtained this information, as the materials submitted by the ACLU plainly show. Instead, the Public Defender was content to rely on the racial composition of its clients as representative of the racial composition of traffic violators on Route 80.
As the State points out, the Public Defender's study also contains no information on the racial composition of those *34 arrested by the State Police for traffic infractions on Route 80. Rather, the Public Defender refers to the racial composition of those arrested on Route 80 for traffic violations whose cases have been submitted to the Warren County Prosecutor for prosecution of indictable crimes and disorderly persons offenses.
Despite these deficiencies, the Public Defender's survey raises disturbing questions concerning whether, as defendants claim, members of minority groups are being targeted or singled out for prosecution of traffic infractions. To be sure, we would have been more comfortable had the Public Defender been precise in estimating the racial composition of those who exceed the speed limit on the western stretch of Route 80 and those who are arrested by the State Police for that offense. This much conceded, it is not far-fetched to assume that the racial composition of the Warren County Public Defender's clients is approximately the same as that of those who violate the traffic laws on Route 80 as it passes through that county. As to the racial composition of those arrested for traffic violations by the State Police on Route 80, the State is in a poor position to complain concerning flaws in the Public Defender's survey. These are the very statistics defendants seek to obtain. We emphasize that most of the relevant proof in selective prosecution cases will normally be in the exclusive control of government agencies. Wayte v. United States, 470 U.S. at 624, 105 S.Ct. at 1539, 84 L.Ed.2d at 566. That is true here.
We stress that defendants need not establish a full prima facie case in order to be entitled to discovery. A prima facie case is one that if unrebutted will lead to a finding of selective prosecution. However, a defendant need not meet this burden just to obtain discovery. All that is needed is proof of a colorable basis for a selective enforcement defense. We find that defendants satisfied that minimal burden.
As we pointed out earlier, a defendant must also establish that the materials he seeks are in some way probative of *35 the elements of selective enforcement. State Police logs, reports, training materials, and the names of instructors, might be relevant to defendants' claim. Nevertheless, the privacy of other citizens and the State's legitimate need for confidentiality with respect to particular items might outweigh the probative value of the materials sought. On remand, these materials should be submitted to the Law Division for an in camera inspection to determine their relevance and the State's need for confidentiality. R. 3:13-3(d); see also State v. Cusick, 219 N.J. Super. 452, 459, 530 A.2d 806 (App.Div. 1987); State v. McBride, 213 N.J. Super. 255, 271, 517 A.2d 152 (App.Div. 1986); State v. Braeunig, 122 N.J. Super. at 330, 300 A.2d 346. The State's representative may apply ex parte for any protective order she or he deems necessary. A complete record should be made of the proceedings and the transcript should then be sealed.

V.
We briefly address the ACLU's claim that defendants had both a common law and a statutory right to the information sought in their motion. The ACLU asserts that the Right to Know Law, N.J.S.A. 47:1A-1 to -4, affords defendants access to "logs" concerning all traffic stops made by New Jersey State Troopers. Acknowledging that the Act applies only to "records which are required by law to be made, maintained or kept on file," N.J.S.A. 47:1A-2, the ACLU argues that State Police logs qualify as public records because they contain information that is included in other reports that are expressly required by law. The ACLU also argues that the logs are required to be maintained under the Uniform Crime Reporting System, N.J.A.C. 13:57-1.1 to -1.3. Alternatively, the ACLU claims that the logs are common law public records and that a balancing of interests compels their disclosure.
In light of the result we reach, we need not consider the ACLU's arguments. Beyond this, none of the arguments belatedly *36 advanced by the ACLU was presented to the Law Division. We adhere to the general rule that an amicus curiae must accept the case before the court as presented by the parties and cannot raise additional issues. Bethlehem Tp. Bd. of Ed. v. Bethlehem Tp. Ed. Ass'n, 91 N.J. 38, 48-49, 449 A.2d 1254 (1982); In re Byram Tp. Bd. of Ed., 152 N.J. Super. 12, 18, 377 A.2d 745 (App.Div. 1977); Endress v. Brookdale Community College, 144 N.J. Super. 109, 123 n. 6, 364 A.2d 1080 (App.Div. 1976).

VI.
We briefly comment on the remainder of defendants' arguments. Both defendants claim that they did not validly consent to the search of their automobile. In addition, defendant Kennedy contends that (1) the Law Division committed plain error by admitting evidence relating to the presence of marijuana and drug paraphernalia in the automobile, (2) the prosecutor exceeded the bounds of fair comment in his summation, (3) he was denied the effective assistance of counsel, and (4) the sentencing judge abused his discretion. In his principal and supplemental briefs, defendant Underwood asserts that (1) the Law Division erred by failing to grant a severance, (2) the court incorrectly denied his motion to dismiss at the end of the State's case, (3) the verdict was against the weight of the evidence, (4) the prosecutor commented on matters not in evidence, (5) his motion for a mistrial should have been granted when the prosecutor commented on his Fifth Amendment privilege against self-incrimination, and (6) the sentence imposed was manifestly excessive.
Our thorough review of the record convinces us that these arguments clearly lack merit. R. 2:11-3(e)(2). Defendants were found guilty on overwhelming evidence. Indeed, the trial transcript literally reeks of defendants' guilt. We discern no trial error requiring a reversal of defendants' conviction.
*37 The matter is remanded to the Law Division for further proceedings consistent with this opinion. Should discovery reveal materials supportive of defendants' claim of selective enforcement, their motion to suppress evidence should be reconsidered. We do not retain jurisdiction.
NOTES
[1] Although both defendants filed motions to suppress evidence, neither elected to testify or present witnesses at the pretrial hearing. Thus, for the purpose of the motion, the facts pertaining to defendants' arrests and the search and seizure of the drugs were uncontradicted.