**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2647-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LISA D. WARD,

    Defendant-Appellant.

_____

Argued January 25, 2017 — Decided July 31, 2017

Before Judges Simonelli and Carroll.

On appeal from the Superior Court of New
Jersey, Law Division, Bergen County, Municipal
Appeal No. 009-24-14.

Matthew W. Reisig argued the cause for
appellant (Reisig Criminal Defense & DWI Law,
LLC, attorneys; Mr. Reisig, on the brief).

Suzanne E. Cevasco, Assistant Prosecutor,
argued the cause for respondent (Gurbir S.
Grewal, Bergen County Prosecutor, attorney;
Ms. Cevasco, of counsel and on the brief).

PER CURIAM

    Following the denial of her motion to suppress, defendant

Lisa D. Ward entered a conditional guilty plea to driving while

intoxicated (DWI), <u>N.J.S.A.</u> 39:4-50.[1] Defendant was sentenced to a seven-month driver's license suspension and ordered to participate in the Intoxicated Driver Resource Center Program for a period of twelve hours. The court also imposed the appropriate fines, assessments, surcharges, and costs.

On appeal, defendant challenges the denial of her motion to suppress and the admission of the arresting officer's narrative incident report and a jail log. Defendant also contends that the entire proceedings were tainted because her blood alcohol content (BAC) reading of 0.12% was typewritten onto the order and certification of intoxicated driving form (order form) prior to her pleading guilty. We affirm.

I.

We derive the following facts from the record. At approximately 10:00 p.m. on July 27, 2010, Officer Timothy Letavish of the Township of Mahwah Police Department (MPD) was parked in his marked patrol vehicle on the right hand side of Moffat Road at the intersection with Route 17 North monitoring traffic. From his position, Letavish had an unobstructed view of the traffic moving northbound on Route 17 and could see a far distance away from where he was positioned.

---

[1] In exchange for defendant's guilty plea, the State dismissed the summons charging her with speeding, <u>N.J.S.A.</u> 39:4-98.

While monitoring the traffic, Letavish saw a vehicle traveling at a high rate of speed in the left northbound lane of Route 17 where the posted speed limit was fifty-five miles per hour. The vehicle was approximately twenty feet away from Letavish when he first observed it, and he believed the vehicle was traveling approximately seventy miles per hour. He testified he was trained to detect speed through observation without the use of any electronic equipment.[2]

Letavish began following the vehicle. As he came within a few car lengths, he activated his overhead emergency lights and attempted to stop it. The driver, later identified as defendant, signaled, moved into the center lane, and continued traveling north. There was no traffic in the right lane that would have prevented her from entering it. Letavish continued to follow behind defendant with his overhead lights activated. After traveling a fair distance and seeing that defendant was not stopping, Letavish activated his siren. Defendant did not stop and continued traveling north. She eventually stopped approximately one mile from where Letavish had activated his emergency lights.

---

[2] Letavish used a handheld laser device, which showed that the vehicle was traveling seventy-five miles per hour. However, the municipal court judge ruled the results were inadmissible because the laser device was not scientifically approved.

A-2647-14T2

Letavish did not measure defendant's speed as he followed behind her, and did not see her drive erratically. She used her directional signals to move from the left lane to the center lane and eventually to the right shoulder, and also parked appropriately.

Letavish parked his patrol vehicle directly behind defendant's vehicle, exited his vehicle, and walked to the passenger's side of defendant's vehicle. He asked defendant for her license, registration, and proof of insurance. Defendant gave him her registration and insurance, but did not produce her driver's license until approximately one minute later and after Letavish requested it a second time.

During Letavish's interaction with defendant, he detected a strong odor of alcoholic beverage emanating from her vehicle. He asked defendant if she had consumed any alcoholic beverages that evening and she replied, "just one." Based on his observations and interaction with defendant, the odor of alcoholic beverages, and defendant's admission to having consumed alcohol, Letavish believed she was impaired. Thus, he returned to his vehicle to check her credentials and requested backup.

After backup arrived, Letavish asked defendant to exit her vehicle. As she exited, she briefly stumbled and grabbed the top half of the driver's side door to assist in balance. As she walked

toward the back of her vehicle, she leaned on the vehicle with her left hand.

Letavish advised defendant that he was going to administer field sobriety tests. As he stood approximately twenty-four inches away from her, he detected a strong odor of alcoholic beverage emanating from her breath. He administered the one-leg-stand test and walk-and-turn test, both of which she did not successfully perform.[3]

Based on his observations of defendant, her performance on the field sobriety tests, and the odor of alcoholic beverage, Letavish concluded she was under the influence of alcohol and placed her under arrest for DWI. Letavish transported defendant police headquarters, where she gave breath samples to determine her blood alcohol content (BAC). Within twenty-four hours of defendant's arrest, Letavish completed an arrest packet. The packet included his narrative incident report, which indicated that defendant had a BAC of 0.12%. Municipal Court Judge Roy F. McGeady[4] admitted the narrative incident report into evidence over defendant's objection.

---

[3] Defendant does not challenge the administration or performance of the field sobriety tests.

[4] Judge McGeady is the municipal court judge in Vicinage 2 Municipal Court for Bergen County. The matter was transferred to

Defendant's testimony contradicted most of Letavish's testimony. Defendant admitted she did not pull over immediately when Letavish activated his emergency lights because she thought he was attempting to get past her. She further admitted to traveling in the left lane when driving past Letavish, and acknowledged that the left lane is for drivers traveling faster than those in the right lane. She testified there was moderate to heavy traffic on Route 17 that evening, with approximately four or five vehicles within 100 feet of her vehicle. She also testified that she was not speeding, but was traveling at approximately fifty miles per hour according to her speedometer. However, she admitted she never had her speedometer calibrated.

In denying defendant's motion to suppress, Judge McGeady found that Letavish's observations of defendant speeding provided a reasonable and articulable suspicion to stop her for committing a motor vehicle violation. The judge also found there was probable cause to arrest defendant for DWI.

Judge McGeady then conducted a N.J.R.E. 104 hearing on the admissibility of defendant's Alcotest results because defendant challenged the twenty-minute observation period. Sergeant Harry Hunt of the MPD, who administered the Alcotest, testified that he

_____

that court after the Mahwah Municipal Court judge recused himself following a defense request.

observed defendant for twenty minutes before he began the Alcotest. The prosecutor then showed Hunt the jail log to refresh his recollection as to the exact time he began and ended the observation period. Defense counsel objected because the State did not produce the document during discovery. The judge afforded defense counsel an approximately ten-minute break to review the document with defendant. The judge then overruled the objection, finding as follows:

> I could accept [Hunt's] testimony. I have the right to choose to accept his testimony that he watched for twenty minutes. Whether that twenty minutes was 11:30 to [12:00], -- whether it was [12:00] to 12:30, may not be relevant. I could choose to accept that [Hunt] watched for twenty minutes period without knowing the exact time. He's trying to corroborate the exact time. I find that to be reasonable. The fact the [defense counsel] . . . can cross-examine[]. I don't see how it's going to change. [Defense counsel] came into this case knowing twenty minutes would be an issue so that's my ruling[.]

Hunt never testified about the time periods on the jail log and Judge McGeady never ruled on the admissibility of the Alcotest results because, prior to completion of the N.J.R.E. 104 hearing, defendant entered a conditional guilty plea to DWI. Defendant preserved her right to appeal from the denial of her motion to suppress and the State's failure to produce the jail log.

Defendant admitted to driving her vehicle after consuming approximately four beers, and that the consumption of the beers influenced her operation of her vehicle.

After defendant pled guilty but before sentencing, Judge McGeady asked if there was a BAC reading. The State represented to the judge, without objection, that defendant's BAC reading was 0.12%. The judge then accepted defendant's guilty plea and sentenced her.

After Judge McGeady imposed sentence, defense counsel took issue with the order form, arguing that defendant's BAC reading was typewritten onto the order form prior to her pleading guilty. The judge stated this was the first time saw the form and did not know anything about it. The judge also stated he did not know the case involved an Alcotest reading until the Rule 104 hearing.

On appeal to the Law Division, defendant raised the same issues she raises in this appeal. In a comprehensive oral opinion, Judge James J. Guida rejected defendant's argument that the entire proceedings were tainted because her BAC reading was typewritten on the order form prior to her pleading guilty. Judge Guida found that Judge McGeady said in certain and specific terms that he never saw the order form prior to defendant's guilty plea and, in fact, had asked if there was a BAC reading prior to sentencing her. Judge Guida also found that even if Judge McGeady saw the

order form before defendant pled guilty, this fact did not taint the proceedings or preclude Judge McGeady from deciding the pre-trial motions.

Judge Guida found that Letavish's narrative incident report was properly admitted into evidence. The judge determined the document was admitted at a N.J.R.E. 104 hearing where the rules of evidence did not necessarily apply pursuant to N.J.R.E. 104(a), and there was no N.J.R.E. 403 issue or claim of privilege. The judge found no authority prohibiting a trial judge from knowing a defendant's BAC reading prior to a guilty plea, or requiring the case to be transferred to a different judge if the BAC reading was revealed. The judge noted that seeing the BAC reading does not mean the judge is going to be tainted or cannot sit as the trier of fact. He compared this situation to a Miranda[5] hearing, where the trial judge rules on the admissibility of a confession and that ruling does not preclude the judge from sitting as the trier of fact. Lastly, Judge Guida found there was no Crawford[6] violation because Letavish testified and was subject to cross-examination.

---

[5] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[6] Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

Judge Guida found the motion to suppress was properly denied, reasoning as follows:

> Bottom line is, Judge McGeady found [Letavish] to be credible in his observations. Now defense counsel over several pages does set forth various mathematical calculations to make a determination that, for the [c]ourt rather, to determine that it was impossible for the officer to judge such speed. In that regard this [c]ourt does not find that the calculations are such that . . . it's impossible, that it is physically through the laws of science or any other way, impossible for [] defendant to have been speeding based upon the observations of [Letavish].
>
> [Letavish's] observations, while he did set forth particular feet and distance are not necessarily deemed to be gospel, if he says 687 feet doesn't mean it couldn't be 690 feet or 600 feet and likewise. And that wasn't the decision, the basis of the decision, Judge McGeady didn't base his decision on any calculation of distance times speed or rate or use any formula. He based it upon human experience.
>
> And in that regard this [c]ourt finds that . . . [Letavish] did have a reasonable and articulable reason to stop. Namely in [Letavish's] opinion, which the [j]udge found to be credible, the defendant was exceeding the speed limit. That of itself was the basis for the stop. Once the stop was made [Letavish] noted and detected an odor of alcohol. And that then allowed the officer to continue with the stop.

Lastly, Judge Guida found defendant suffered no prejudice as a result of the State's failure to produce the jail log, reasoning as follows:

10

There shall be a continuing duty to provide discovery pursuant to [Rule 7:7-7(j)]. If at anytime during the course of the proceedings it is brought to the attention of the [c]ourt that a party has failed to comply with this rule or with an order issued pursuant to this rule the [c]ourt may, and the operative term is may, order that party to provide the discovery of materials not previously disclosed, grant a continuance, prohibit the party from introducing it in evidence or such other relief as it deems appropriate.

And I am just, I note that the Municipal Court does have broad discretion to decide what sanction, if any, is appropriate if there is a violation of discovery, a failure to provide discovery. And that's [State v. Wolfe, 431 N.J. Super. 356 (2013).] In that case the [c]ourt actually allowed the State to cure at trial deficiencies that were necessary to support a foundation for an alcohol influence report, when the deficiencies caused no prejudice and were not the result of any intent to mislead.

. . . .

In that regard the [c]ourt does not find that there is any prejudice to the defendant. And that the appropriate remedy at the time was to provide a short break for defense counsel to review with . . . his client, the report. But I find that it did not prejudice the defendant in this instance on that particular issue.

## II.

We first address defendant's argument that both trial courts erred in denying her motion to suppress. Defendant argues that Judge Guida based his ruling on his erroneous belief that Judge

McGeady made credibility determinations regarding the testimony of Letavish and defendant. Defendant also argues that Judge McGeady never answered the dispositive factual question as to how a police officer could ever observe an alleged motor vehicle violation from a distance that was so great it could not even be estimated.

On appeal from a municipal court to the Law Division, the review is de novo on the record. R. 3:23-8(a)(2). The Law Division judge must make independent findings of fact and conclusions of law based upon the evidentiary record of the municipal court and must give due regard to the opportunity of the municipal court judge to assess the witnesses' credibility. State v. Johnson, 42 N.J. 146, 157 (1964). On appeal from a Law Division decision, the issue is whether there is "sufficient credible evidence present in the record" to uphold the findings of the Law Division, not the municipal court. Id. at 162. However, as with the Law Division, we are not in as good a position as the municipal court judge to determine credibility, and should not make new credibility findings. State v. Locurto, 157 N.J. 463, 470-71 (1999) (citing Johnson, supra, 42 N.J. at 161-62). We "do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." State v. Barone, 147 N.J. 599, 615 (1997). We give due regard to the trial court's credibility

findings. State v. Cerefice, 335 N.J. Super. 374, 383 (App. Div.

2000). Applying these standards, we discern no reason to reverse

any of Judge Guida's rulings.

Contrary to defendant's argument, Judge McGeady made

credibility findings when he found as follows:

> In examining the testimony[,] the first thing the [c]ourt has to decide is whether . . . Letavish has reasonable, articulable suspicion to stop [defendant] in the first place . . . [Delaware v. Prouse, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 660 (1979)] is the key United States Supreme Court case. [State v. Zapata, 297 N.J. Super. 160 (1997), certif. denied, 156 N.J. 405 (1998)] is the key New Jersey case. Both hold that a vehicle is subject to seizure if the [o]fficer has a reasonable, articulable suspicion to believe that either the vehicle is unregistered, the operator is unlicensed or either the operator or a passenger in the vehicle is subject to seizure for some violation of the law. And it's clear the State is basing the seizure upon speeding.

>     . . . .

> I'm satisfied that . . . Letavish is a certified radar operator separate and apart from the laser operator. He has testified to that as to his training. He said that he had as part of that radar operator training, he had to visually estimate speed and then compare it to the radar reading and he has a supervisor who observed this and he had to be accurate as to what the actual speed was compared to the radar, his observations of the radar.

> [Letavish] said he had an opportunity to observe [defendant's] vehicle by more than 487

feet away and from that distance, whatever that was, we don't know, we know it was more than 487 feet until she passed him and until a mile after he put on the overhead lights. He testified that the speed limit is [fifty-five] miles per hour. <u>I find as a fact that that is true.</u> [Defendant] confirmed that. There's no contest as to the actual speed limit.

At different times, the [c]ourt interpreted [Letavish's] testimony as being that [defendant] was traveling either [seventy] or [seventy-five] miles per hour. So either [fifteen] or [twenty] miles per hour over the speed limit. <u>I'm satisfied</u> that through his training, <u>despite [defendant] testifying</u> that she observed her speedometer and the needle was exactly on [fifty-five] the whole time from Paramus through Mahwah the time of the stop, as pointed out by [the State], there was no evidence that her speedometer is calibrated so even if that's true, we don't know if that means she was actually going [fifty-five] miles per hour.

<u>I'm satisfied</u> that . . . Letavish has a higher degree of skill in determining the speed based on the distinction I've just made and that his estimate is accurate <u>and I accept it</u>, at least by a preponderance of the evidence standard and I'm satisfied that while [defense counsel] argued that maybe there was speculating as to how fast he could operate the laser device after he first saw the vehicle, that we didn't measure that from 487 feet away until the time that she passes him because he observed her way before that and it appears the only reason he noticed she was 487 feet away because at that point he was using the laser and the laser told him that.

<u>So I'm satisfied</u> that [Letavish] did observe [defendant] more than 487 feet away when he made his speed estimate. <u>I'm</u>

> satisfied that that is reasonable, especially for a trained radar operator. So I'm satisfied there's reasonable, articulable suspicion that he had to stop [defendant] for a violation of [N.J.S.A. 39:4-98 or N.J.S.A. 39:4-99] which is probably the proper section for speeding in excess of [fifty-five] miles per hour.
>
> [(Emphasis added).]

The words "I'm satisfied" and "I accept" are undoubtedly credibility determinations.

In any event, Judge McGeady was not required to articulate detailed credibility findings. See Locurto, supra, 157 N.J. at 474. The reasons supporting his determinations may be inferred from, and are well-supported by, the facts and the testimony of both witnesses. See ibid. Judge McGeady found Letavish's testimony credible and defendant's testimony not credible. Accordingly, Judge Guida's reliance on Judge McGeady's credibility determinations was proper. See Johnson, supra, 42 N.J. at 157 (holding that the Law Division judge must give due regard to the opportunity of the municipal court judge to assess the witnesses' credibility).

That being said, we now address defendant's challenge to the motor vehicle stop. "[A] police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense." Locurto,

15

<u>supra</u>, 157 <u>N.J.</u> at 470 (citations omitted). "Reasonable suspicion" means that "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." <u>Terry v. Ohio</u>, 392 <u>U.S.</u> 1, 21, 88 <u>S. Ct.</u> 1868, 1880, 20 <u>L. Ed.</u> 2d 889, 906 (1968). "Reasonable suspicion" is "less than proof . . . by a preponderance of the evidence," and "[a] less demanding [standard] than that for probable cause," but must be something greater "than an 'inchoate and unparticularized suspicion or hunch.'" <u>U.S. v. Sokolow</u>, 490 <u>U.S.</u> 1, 7, 109 <u>S. Ct.</u> 1581, 1585, 104 <u>L. Ed.</u> 2d 1, 10 (1989).

"The fact that the officer does not have the state of mind hypothesized by the reasons which provide the legal justification for the search and seizure [or investigatory stop] does not invalidate the action taken, so long as the circumstances, viewed objectively, support the police conduct." <u>State v. Kennedy</u>, 247 <u>N.J. Super.</u> 21, 28 (App. Div. 1991). A Fourth Amendment violation is assessed based upon an objective viewing of the officer's actions considering the circumstances confronting him at that time, not his actual state of mind. <u>Maryland v. Macon</u>, 472 <u>U.S.</u> 463, 470-71, 105 <u>S. Ct.</u> 2778, 2783, 86 <u>L. Ed.</u> 2d 370, 378 (1985).

Ultimately, "courts will not inquire into the motivation of a police officer whose stop of an automobile is based upon a

traffic violation committed in his presence." Kennedy, supra, 247 N.J. Super. at 28. "The fact that the justification for the stop was pretextual . . . [is] irrelevant." Id. at 29. Investigatory stops are valid in situations where the objective basis for the stop was a minor traffic violation. Locurto, supra, 157 N.J. at 466 (finding the stop was justified based on the officer's observations of the defendant driving at a high rate of speed in excess of the posted speed limit). The State need not prove that the suspected motor vehicle violation had in fact occurred. Id. at 470.

The record amply supports Judge Guida's finding that Letavish's observation of defendant's vehicle speeding was sufficient to prove the officer had a reasonable and articulable suspicion that defendant committed a motor vehicle violation, justifying the stop. See id. at 474-75. Our Supreme Court has recognized that "[i]ntoxicated drivers generally do not recall with precision the exact speed they were driving when first observed by a police officer. A police officer, on the other hand, has been trained to estimate the speed of a moving vehicle." Id. at 472. Letavish testified, credibly, that he observed defendant's vehicle traveling at approximately seventy miles per hour in a fifty-five mile—per-hour zone. Accordingly, the denial of defendant's motion to suppress was proper. Defendant's argument

about how a police officer can observe an alleged motor vehicle violation from a great distance has no merit whatsoever.

## III.

We have considered defendant's remaining contentions in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We affirm substantially for the reasons Judge Guida expressed in his comprehensive and cogent oral opinion. We add the following brief comments.

Admission of Letavish's narrative incident report was not an abuse of discretion. State v. Kuropchak, 221 N.J. 368, 385 (2015). The rules of evidence, other than N.J.R.E. 403, did not apply to a motion to suppress hearing. N.J.R.E. 104(a). There was no N.J.R.E. 403 issue. In fact, defense counsel used the document on cross-examination to attack Letavish's credibility.

Further, the inclusion of defendant's BAC reading on the narrative incident report and order form caused her no prejudice. The record is clear that Judge McGeady never saw defendant's BAC reading until after she pled guilty, and even if he had seen it beforehand, nothing precluded him from sitting as the factfinder. We have held that "[a] judge sitting as the factfinder is certainly capable of sorting through admissible and inadmissible evidence without resultant detriment to the decision[-]making process."

18

State v. Medina, 349 N.J. Super. 108, 130 (App. Div.) (citations omitted), certif. denied, 174 N.J. 193 (2002). We emphasized that judges are presumed to "have the ability 'to exclude from their consideration irrelevant or improper evidence and materials which have come to their attention.'" Ibid. (citation omitted).

Lastly, the State's failure to provide the jail log prior to the Rule 104 hearing did not deprive defendant of due process. A municipal court judge has broad discretion to decide an appropriate sanction for a discovery violation pursuant to Rule 7:7-7(j). Judge McGeady appropriately remedied the State's discovery violation by granting a recess to allow defense counsel to review the document and cross-examine Hunt. Nonetheless, as both judges properly found, Hunt's testimony alone established the twenty-minute observation period without the jail log.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2647-14T2