**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2528-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TIWAN M. FLAGLER, a/k/a
TUQUAN ASHLEY,

     Defendant-Appellant.

_____

Submitted February 28, 2019 – Decided April 3, 2019

Before Judges Simonelli and Firko.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 14-10-1779.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Alanna M. Jereb, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Tiwan M. Flagler appeals from the November 16, 2017 Law Division order, which denied his motion to suppress evidence seized from his person following a motor vehicle stop. On appeal, defendant raises the following contention:

POINT I

THE TRIAL JUDGE ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE OFFICER'S TESTIMONY, OFFERED TO ESTABLISH PROBABLE CAUSE AND HEIGHTENED CAUTION, LACKED CREDIBILITY.

We reject this contention and affirm.

We derive the following facts from the evidence presented at a new suppression hearing following a remand by this court.[1]

Police Officer Gabriel Moreano of the Jersey City Police Department testified that at approximately 8:30 p.m. on May 18, 2014, he and his partner, Police Officer Christopher Viero, were in an unmarked patrol car traveling west

_____

[1] In defendant's prior appeal, we remanded for a new suppression hearing because the motion judge applied the wrong standard of review in assessing the State's burden of proof to justify the warrantless search of defendant's person. State v. Flagler, No. A-0825-15 (App. Div. April 6, 2017). The new hearing was before a different judge.

on Clinton Avenue.  Moreano described the area as a high crime area known for narcotics transactions, shootings, robberies, and assaults.

The officers were approximately two car lengths directly behind a black four-door Toyota.  As the Toyota entered the intersection of Clinton Avenue and Kennedy Boulevard, the light turned red, but the driver did not stop and continued traveling west on Clinton Avenue.  The officers activated the overhead lights and siren on their patrol car to conduct a motor vehicle stop.

The Toyota stopped at the next street.  Moreano and Viero exited their patrol car and immediately smelled phencyclidine (PCP) emanating from the vehicle.  Moreano was certain it was PCP that he smelled based on his training and experience, which included more than two hundred arrests involving PCP.  The officers saw a male in the driver's seat and a male in the front passenger's seat and saw that the driver and passenger side windows were down.  The smell of PCP became stronger as the officers approached the Toyota.  Both men were ordered to show their hands for the officers' safety, and they complied.  Moreano spoke to the passenger, later identified as defendant, while Viero spoke to the driver, later identified as Jazmo Boyd.

Moreano testified that he asked defendant if he was "all right," and saw that defendant "was just zombied out, frozen, his hands were out.  He looked at

3

me, his eyes were wide open. He was sweating, he was nervous. I asked him again is he okay. He hesitated answering my question." Moreano explained that these were all PCP-related behaviors that "put [his] danger awareness up . . . ." Moreano also explained why he did not describe in detail defendant's demeanor and behavior in prior hearings or in the police report.

Moreano asked Boyd to exit the Toyota because of the smell of PCP and asked if there was anything inside the vehicle. Boyd replied there was nothing inside the Toyota. A pat down of Boyd revealed nothing negative. Boyd was cooperative throughout the encounter. The officers issued him motor vehicle summonses for failure to observe a signal at the red light and failure to exhibit a driver's license.

Moreano asked defendant to exit the Toyota for the officers' safety and because the smell of PCP was emanating exactly from where defendant was sitting in the vehicle. Moreano explained that PCP would impact his potential safety because "[b]ehaviors, aggressiveness, it's . . . a bad drug. Like it's really . . . very dangerous to [Boyd and defendant] and [the officers] and while [defendant] was inside the vehicle I felt safer if he was able to come out [of] the car and I could just pat him down for my safety."

A-2528-17T2

Moreano asked defendant if he had any weapons or anything sharp on him, and defendant replied he had a handgun in his right pants pocket. Moreano immediately grabbed defendant's arms, placed him under arrest, handcuffed him, and read him his Miranda[2] rights. Moreano touched the outside of defendant's right pants pocket, felt a handgun, and retrieved it. As Moreano was rendering the handgun safe, Viero came over to assist Moreano. Defendant told Viero he had a bottle of PCP in his left cargo pants pocket. Viero went into the pocket and retrieved the bottle.

Boyd testified the light was green when he proceeded through the intersection. He heard lights and sirens, looked into his rearview mirror and saw two or three cars behind him and an unmarked police car behind those cars. All of the cars stopped and the patrol car pulled behind his car. Boyd claimed to have had prior interactions with the two officers, but could give no specifics. He admitted he had received summonses, but could not recall the outcome of those summonses.

In denying defendant's motion to suppress, the motion judge first addressed the stop. The judge found Moreano's testimony credible and determined he saw the driver of the Toyota commit the traffic violation of

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2528-17T2

driving through a red light. The judge noted Moreano was very confident in his testimony; was professionally dressed; had no interest in the outcome of the trial; had excellent recollection of the offense; candidly admitted the police report was not fully completed as to the testimony he gave; and his testimony was based solely on his personal observations. The judge concluded the light was red when Boyd traveled through the intersection, and the stop was lawful because the officers had a reasonable and articulable suspicion that the driver of the Toyota committed a motor vehicle violation.

The judge next addressed Moreano asking defendant to exit the Toyota. The judge acknowledged defendant made no furtive movements, but found Moreano had a reasonable suspicion based on the totality of the circumstances that defendant was engaged in criminal activity and a heightened caution justifying asking defendant to exit the Toyota. The judge also found that based on the totality of the circumstances, Moreano had sufficient probable cause to arrest and search defendant. Thus, the judge concluded the search incident to defendant's arrest was lawful.

On appeal, defendant contends the State failed to establish there was probable cause for the stop because Moreano's testimony was not credible because Moreano waivered about where the Toyota was located when the light

6                                              A-2528-17T2

turned red and failed to explain discrepancies between his testimony and the police report. Defendant argues that because the stop was unlawful, his removal from the Toyota and seizure of the handgun and PCP found on his person were fruits-of-the-poisonous tree that should have been suppressed.

Our Supreme Court has established the standard of review applicable to consideration of a trial judge's ruling on a motion to suppress:

> We are bound to uphold a trial court's factual findings in a motion to suppress provided those "findings are 'supported by sufficient credible evidence in the record.'" Deference to those findings is particularly appropriate when the trial court has the "opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy." Nevertheless, we are not required to accept findings that are "clearly mistaken" based on our independent review of the record. Moreover, we need not defer "to a trial . . . court's interpretation of the law" because "[l]egal issues are reviewed de novo."
>
> [State v. Watts, 223 N.J. 503, 516 (2015) (alteration in original) (citations omitted) (quoting State v. Elders, 192 N.J. 224, 243-44 (2007); State v. Vargas, 213 N.J. 301, 327 (2013)).]

The trial court's "credibility determinations are entitled to deference and those factual findings must be sustained as long as they are supported by sufficient, credible evidence in the record." State v. Yohnnson, 204 N.J. 43, 62 (2010). We owe deference to "trial courts' credibility findings that are often

influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." State v. Locurto, 157 N.J. 463, 474 (1999). On appeal, we are not "permitted to 'weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence.'" Id. at 472 (quoting State v. Barone, 147 N.J. 599, 615 (1997)).

Here, the motion judge found that any inconsistencies in Moreano's testimony actually bolstered his credibility. The judge found Moreano was credible based on his personal observations and the fact that he candidly admitted the police report was not fully completed. The judge also found Moreano was confident in his testimony, had a good recollection of the offense, and had no interest in the outcome of the trial.

Further, Moreano explained why he did not describe defendant's demeanor and behavior in the prior hearing or the police report, stating it was not customary to include each and every detail in a police report, and he was not previously asked questions about defendant's demeanor and behavior. While there were some discrepancies, Moreano's testimony in the current hearing was substantially the same as in the prior proceedings. Moreano consistently testified that he saw the Toyota run the red light. Accordingly, the judge

properly found Moreano was credible and the light was red when Boyd travelled through the intersection.

"It is firmly established that a police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense." Locurto, 157 N.J. at 470 (1999) (quoting State v. Smith, 306 N.J. Super. 370, 380 (App. Div. 1997)). Ultimately, "courts will not inquire into the motivation of a police officer whose stop of an automobile is based upon a traffic violation committed in his presence." State v. Kennedy, 247 N.J. Super. 21, 28 (App. Div. 1991). "The fact that the justification for the stop was pretextual . . . [is] irrelevant[,]" id. at 29, and the State need not prove that the suspected motor vehicle violation has in fact occurred. Locurto, 157 N.J. at 470. Rather, the inquiry is "whether the officer could have an objectively reasonable belief, even if mistaken, that the defendant's driving behavior 'affected traffic,' to justify the stop. State v. Sutherland, 231 N.J. 429, 439 (2018).

The officers in this case had a reasonable and articulable suspicion that Boyd committed a motor vehicle violation in their presence. Even if they were mistaken, their reasonable belief that Boyd ran the red light was sufficient to

conduct the stop. Accordingly, the stop of the Boyd's vehicle was lawful, and the judge properly denied defendant's motion to suppress.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION